## S93A1854. HARLEY v. THE STATE.
(440 SE2d 178)

CLARKE, Chief Justice.

Appellant Henry Lee Harley was convicted for the murder of his granddaughter, Cassandra Grant, and for aggravated assault upon his daughter, Lisa Addison.[1] The State offered evidence of activities leading up to the crimes at issue. The evidence dealt with the relationship between Harley and his wife, Elizabeth Harley, and his treatment of her on the day of the murder and assault.

In August 1991, Elizabeth Harley left appellant and went to stay with her sister in Eden, Georgia. On the morning of October 27, appellant drove to the sister's trailer and kidnapped Ms. Harley at knifepoint, telling her that he was going to kill her. Appellant took his

---

[1] Henry Lee Harley was indicted in the Superior Court of Bryan County on March 16, 1992, for the murder of Cassandra Grant and aggravated assault of Lisa Addison. Following a jury trial on May 19-20, 1992, appellant was convicted on both counts. He was sentenced to life imprisonment on the murder count and to a consecutive 20-year term for the aggravated assault count. Appellant filed a motion for new trial on June 12, 1992, and the motion was denied on June 23, 1993. A timely notice of appeal was filed on July 9, 1993. The case was submitted to this court for decision without oral argument on October 8, 1993.

estranged wife to an abandoned house that belonged to his family. He made her change clothes and took her back to his house in Savannah where their sons were. Appellant told her to call her mother to let her know she was at home. Meanwhile, he changed into a suit and tie and left for church. While at church, appellant borrowed a car from a parishioner, telling her he had left his sermon at home. When he arrived at home, Ms. Harley told her sons to lock the doors. Appellant forced his way inside. Ms. Harley ran outside, but appellant caught her in the yard. Appellant's 19-year-old son followed them outside, grabbed a shovel and told appellant to let his mother go. Ms. Harley ran into a neighbor's trailer. Appellant drove off, and Ms. Harley called the police.

Lisa Addison and Cassandra were expected at a birthday party at the trailer, but neither arrived. Appellant had visited his niece at the hospital earlier that day. The victims were also at the hospital with two other girls. At trial, Ms. Addison testified that after dropping the other girls off, appellant took her and Cassandra to an abandoned house. He forced them out of the car and began beating Ms. Addison with his hands. She also testified that he put Cassandra "under something where she couldn't breathe." Eventually, Ms. Addison testified, she passed out and could not remember what else happened.

After the crime, appellant returned the car he borrowed. In this car, the police found blood spatters inside the car, on the door jam, and on a tire and hubcap, suggesting that the door was open when the blood spattered. The blood patterns were consistent with a person being beaten with a blunt instrument. He then drove to his girl friend's house, picked her up and went to South Carolina in another car. The police arrested Harley in South Carolina on the following Wednesday.

On Sunday, October 27, 1991, at about 5:00 p.m., Ms. Addison crawled from under a garbage heap and was discovered by Samuel Williams. She was severely beaten and was unconscious when the emergency medical technicians arrived. Cassandra's body was found in the same area, and she died before reaching the hospital. An autopsy revealed that Cassandra died from massive hemorrhaging that enveloped her skull. The injuries were consistent with being beaten with a blunt object made of wood or metal. Ms. Addison had multiple lacerations to the head and face, and virtually every bone in her face had been broken. Appellant was convicted of murder and aggravated assault. He appeals from this conviction, and we affirm.

1. After reviewing the evidence in the light most favorable to the jury's verdict of guilty, we conclude that a rational trier of fact could have found the defendant guilty of murder and aggravated assault beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Appellant enumerates as error the trial court's admission of

testimony about the appellant's alleged kidnapping of his estranged wife. He contends that the prejudicial effect of the testimony outweighed any probative value and that the testimony put appellant's character at issue.

After Ms. Harley testified about her ordeal, the trial court instructed the jury that the testimony was to be considered only to show motive. Appellant contends that it was error to allow evidence of prior difficulties between the defendant and the victim. Ms. Harley's testimony, he continues, did not concern his relationship with the murder victim. We disagree with appellant's characterization of the testimony. The kidnapping of Ms. Harley shows a motive or a continuous course of conduct and is admissible. *Rivers v. State*, 250 Ga. 288 (5) (298 SE2d 10) (1982).

Ms. Harley testified that on the day prior to the crime, she told appellant that their relationship was over. That night, appellant kidnapped his wife and threatened to kill her. On the following day, he kidnapped his daughter and granddaughter, brutally beat them, and left them for dead. During the crime, appellant asked his daughter why she would live with her mother when her mother was "doing bad things" to him. Evidence of the kidnapping of Elizabeth Harley was relevant to explain appellant's acts against his daughter and granddaughter. The trial court did not err in admitting evidence of the kidnapping of Ms. Harley.

3. During the State's case-in-chief, the trial court admitted into evidence a bloodstained bedspread found at the scene of the crime. Appellant contends that the State did not show an adequate chain of custody for the evidence, and that the bedspread may have been tampered with. The bedspread, he contends, should not have been admitted. However, reviewing the transcript, it is apparent that the State did establish chain of custody.[2] In the absence of testimony to refute the statements of witnesses that they possessed the article from the

---

[2] During the State's direct examination of Gerald Hill, Agent Hill testified:
Q: [L]ooking at the blue bedspread in the exhibit, does it appear to be in the same condition now as it was when you first received it?
A. Yes.
Q. Does it appear to be materially altered or changed in any way?
A. Not that I can determine.
. . .
A. What's been marked as State's Exhibit 70 has my writing on the outside of it, indicating that it came from the Bryan County scene dated 9-28-91 at 9:16 a.m., a blue colored blanket, blood-stained and soiled, and it has the GBI Savannah Crime Lab number on the outside of the bag.
. . .
Q. Agent Hill, from whom did you receive State's Exhibit 70?
A. I received it from myself.
Q. Where did you get it from?
A. From the scene.

time they received it until it was delivered to another named person, the showing of a chain of custody is sufficient. *White v. State*, 230 Ga. 327 (4) (196 SE2d 849) (1973).

4. Before trial, appellant submitted a request for scientific reports pursuant to OCGA § 17-7-211. The State is required to provide the defendant with written copies of scientific reports prepared as part of the investigation of the crime. During the State's case-in-chief, a GBI agent testified that he had performed a "luminal" test at the scene on the suspect vehicle. In a luminal test, the officer puts a small amount of luminal on an item. The luminal reacts with the iron in blood, causing the substance to fluoresce. Officers use this test to detect the presence of blood. Appellant contends that the results of this test were not provided pursuant to his request and that the trial court should have granted his motion for mistrial.

OCGA § 17-7-211 applies only to "written scientific reports." "[I]f there is no writing, there is nothing to which the statute attaches." *Law v. State*, 251 Ga. 525, 528 (2) (307 SE2d 904) (1983). Since the luminal test was never reduced to writing, OCGA § 17-7-211 did not require its production, and there was no reversible error.

5. Appellant contends that the prosecutor made references during closing argument to the presence of blood on the appellant's clothes. However, his girl friend testified that there was no blood on his clothes. Appellant now contends that the prosecutor's comments were inflammatory and that a mistrial should have been granted. Appellant waived his right to review the prosecutor's improper remarks because appellant did not object or demand a mistrial. *Ledbetter v. State*, 262 Ga. 370 (418 SE2d 57) (1992).

6. The appellant argues that the trial court erred in failing to charge the jury on the lesser included offenses of voluntary manslaughter and simple battery. However, appellant makes no citations to evidence in the record that would justify a charge of voluntary manslaughter. The trial court properly refused to charge voluntary manslaughter where such a charge was not supported by the evidence.

The indictment against appellant charging aggravated assault read that he

> did then and there unlawfully make an assault upon the person of Lisa Michelle Addison by striking the head of said Lisa Michelle Addison with an object unknown to the grand jurors, which, when used offensively against a person, is likely to or actually does result in serious bodily injury.

The unrebutted evidence submitted at trial indicated that Ms. Addison was beaten with a heavy blunt instrument. Therefore, simple battery was not a lesser included offense and the trial court properly re-

fused to charge the jury on it.
*Judgment affirmed. All the Justices concur.*

DECIDED FEBRUARY 28, 1994.

*Lloyd D. Murray,* for appellant.
*Dupont K. Cheney, District Attorney, J. Stephen Archer, Assistant District Attorney, Michael J. Bowers, Attorney General, Susan V. Boleyn, Senior Assistant Attorney General, Peggy R. Katz, Staff Attorney,* for appellee.