## A00A1075. CALDWELL v. THE STATE.
### (538 SE2d 531)

ELLINGTON, Judge.

A jury found Walter Caldwell guilty of false imprisonment, OCGA § 16-5-41, and aggravated assault, OCGA § 16-5-21. Caldwell appeals from the order denying his motion for new trial, challenging the admission of certain evidence, the prosecutor's closing argument, a jury charge, and the effectiveness of his trial counsel. Finding no reversible error, we affirm.

The evidence shows that Caldwell and the victim lived together in a romantic relationship for about six years. The victim testified that on July 5, 1997, she and Caldwell had been drinking beer and brandy. Around 11:00 that evening, Caldwell began beating the victim with a pole and choking her. Caldwell attacked the victim because she refused his request for oral sex. Caldwell accused her of engaging in sexual acts with her children. When the victim denied such conduct, Caldwell hit her. Caldwell told her to follow him into the bathroom. The victim testified that when she complied, Caldwell struck her eye with a drinking glass and threatened to kill her. She testified that Caldwell then ran water in the bathtub, forced her to remove her clothing, and directed her to get into the bathtub. The victim said that Caldwell accused her of having sex with his brother and his nephew. When she denied the accusations, Caldwell stabbed

---

her left arm and hands with a pair of scissors and scraped her skin off with a razor. Caldwell confined the victim in the bathroom throughout the night and continued to beat her and torment her with questions about her sexual past. The victim's son testified that he woke up that morning to his mother's screams and ran to a neighbor's home to call the police.

When the police arrived at Caldwell's home, Caldwell greeted them with a drinking glass in his hand. He smelled of an alcoholic beverage. He invited the police inside and told them that he was glad that they there because he had been trying to convince the victim to call the police because she was trying to hurt herself. Caldwell led the police to the bathroom, where they found the victim, badly beaten and covered with blood. The bathroom was also spattered with blood.

Caldwell, who took the stand in his own defense, denied requesting oral sex from the victim and denied confining her to the bathroom and assaulting her in any way. He testified that her wounds were self-inflicted and that she no longer wanted to live because she believed that he did not love her anymore.

1. Caldwell contends that the trial court erred in admitting similar transaction evidence. Absent an abuse of discretion, we will not disturb a trial court's determination that similar transaction evidence is admissible. *Brooks v. State*, 230 Ga. App. 846, 847 (1) (498 SE2d 139) (1998).

The State presented the testimony of Caldwell's daughter, who was 16 years old at the time of the trial. She testified that her mother and Caldwell had divorced when she was very young and that when she visited her father, she generally slept in his bedroom. She stated that on one of those occasions, when she was about 13 years old, Caldwell woke her up and demanded oral sex. She testified that when she refused, Caldwell kicked her, causing her to fall off the bed. Caldwell contends that the trial court erred in admitting the evidence because its probative value was substantially outweighed by the danger of unfair prejudice. He urges that the trial court erred in allowing the evidence without requiring the State to refrain from informing the jury that the alleged victim was his daughter.

At the pre-trial hearing, pursuant to *Williams. v. State*, 261 Ga. 640 (409 SE2d 649) (1991), the State argued that both cases involved a domestic situation in which Caldwell demanded sexual favors then assaulted the victims when they refused. The trial court tentatively concluded that the three *Williams* factors were met and ruled that the evidence would be permitted, subject to the daughter's testifying in a proffer before the trial court. During trial, the court heard the daughter's testimony outside the presence of the jury and affirmed its earlier determination that the evidence was admissible. During the prosecutor's opening statement, during the daughter's testimony,

and again in its jury charge, the trial court instructed the jurors that they were "strictly limited in [their] consideration of the evidence" to the identity and state of mind of the defendant.

Here, because the evidence focused on Caldwell's state of mind when denied a sexual favor, it would tend to prove whether he or the victim had inflicted the victim's wounds.

> In cases of domestic violence, prior incidents of abuse against family members or sexual partners are more generally permitted because there is a logical connection between violent acts against two different persons with whom the accused had a similar emotional or intimate attachment. A prior act can show the accused's attitude or mindset (i.e., his bent of mind) as to how children or sexual partners should be treated or "disciplined." A prior act can also show his actual course of conduct in reacting to disappointment or anger in such a relationship, evidencing a pattern.

(Footnotes omitted.) *Smith v. State*, 232 Ga. App. 290, 295 (1) (501 SE2d 523) (1998). The nature of the two offenses and the circumstances surrounding their commission were sufficiently similar that the relevance of the similar transaction to show Caldwell's state of mind outweighed any prejudice. See also *Malcolm v. State*, 263 Ga. 369, 370 (2) (434 SE2d 479) (1993). We find no abuse of discretion.

2. During closing argument, the prosecutor stated: "I ask that you do not victimize [the victim] and [Caldwell's daughter] again. They have been through enough. Let them have their day in court, let them see justice done. Convict Walter Caldwell for what he did to these women. Thank you." Caldwell contends that these statements were improper and that the statements denied him a fair trial.

Caldwell concedes that there was no objection to the prosecutor's argument. His failure to object waived his right to challenge any impropriety of the argument on appeal. *Mullins v. State*, 270 Ga. 450-451 (2) (511 SE2d 165); *Harley v. State*, 263 Ga. 875, 878 (5) (440 SE2d 178) (1994). Further, his argument that the trial court erred by failing to declare a mistrial sua sponte or to admonish the prosecutor is also unavailing. *Mullins v. State*, 270 Ga. at 451 (2); *Lenear v. State*, 239 Ga. 617, 621 (16) (238 SE2d 407) (1977).

3. Caldwell contends that the trial court erred in submitting partial written jury instructions to the jury before it started deliberations. The record shows that a juror asked, "Will we have copies of the medical police reports and a definition for aggravated assault, battery, et cetera?" Subsequently, the trial court provided the jury with 12 copies of the portion of the charge regarding aggravated assault, lesser included offenses, and battery.

When the jury requests a recharge on a portion of the charge, it is within the trial court's discretion whether to do so orally or in writing. *Jordan v. State*, 207 Ga. App. 710, 712-713 (2) (429 SE2d 97) (1993); see also *Elrod v. State*, 222 Ga. App. 704, 708 (4) (475 SE2d 710) (1996) (trial court did not abuse its discretion where it gave partial written instructions to the jury after deliberations began). Caldwell has failed to show that the trial court abused its discretion by providing the jury, before deliberations began, with partial written jury instructions in response to its question.

4. Caldwell contends that the trial court erred by permitting a witness to offer her expert opinion on what he claims was the ultimate issue in the case and a matter within the ken of the ordinary juror.

The State presented the testimony of one of the responding officers, who had also been a paramedic from 1989 to 1996 and who had received training on trauma, suicidal behavior, and determining whether injuries were self-inflicted. She testified that when she arrived at Caldwell's home, she found "multiple lacerations, some deep puncture wounds, and some contusion throughout [the victim's] body." She stated that,

> the victim had two lacerations on the left cheek, she had a penetrating wound to the right and left palm of her hands. She also had lacerations to her left forearm, multiple lacerations on her left forearm, she had contusion swelling noted to her right arm and left shoulder, she had other lacerations noted on her right forearm.

Photographs of some of the wounds were also admitted into evidence. After the trial court admitted the officer as an expert, the officer opined that the victim's injuries were characteristic of "defensive" wounds.

> [E]xpert opinion testimony on issues to be decided by the jury, even the ultimate issue, is admissible where the conclusion of the expert is one which the jurors would not ordinarily be able to draw for themselves; i.e., the conclusion is beyond the ken of the average layman.

(Punctuation omitted.) *State v. Butler*, 256 Ga. 448, 450 (2) (349 SE2d 684) (1986). In this case, it was permissible for the officer to testify about her observations of the victim's wounds, to make an inference based on her training and on her observations of the wounds, and to opine that the victim's wounds were consistent with "defensive" ones, a conclusion that is beyond the ken of the average layman. See generally *Coleman v. State*, 257 Ga. 313, 314 (1) (357 SE2d 566) (1987). We

find no abuse of discretion in admitting the testimony.

5. Finally, Caldwell contends that he was denied effective assistance of trial counsel. To establish ineffectiveness, an appellant must show that (1) counsel's performance was deficient, and (2) the deficiency so prejudiced his defense that a reasonable possibility exists that the trial's outcome would have been different but for that deficiency. *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984); *Etheridge v. State*, 228 Ga. App. 788, 789 (2) (492 SE2d 755) (1997). We need not address both prongs of this test if the showing on one prong is insufficient, nor must we address them in any particular order. *Ponder v. State*, 201 Ga. App. 388, 389 (1) (411 SE2d 119) (1991). Further, there is a strong presumption that trial counsel's performance falls within the wide range of reasonable professional assistance, and that any challenged action by trial counsel might be considered sound trial strategy. *Kelly v. State*, 238 Ga. App. 691, 694 (2) (520 SE2d 32) (1999). To rebut this presumption, appellant must show that counsel's representation fell below an objective standard of reasonableness. Id. We review a trial court's finding that a defendant has been afforded effective assistance of counsel under the clearly erroneous standard. Id.

(a) Caldwell complains that trial counsel was ineffective by failing (1) to urge the court to "sanitize" the similar transaction evidence by requiring the State to refrain from advising the jury that the victim of the similar transaction was his daughter, or alternatively, (2) to enter into a stipulation with the State on the similar transaction evidence. Our ruling in Division 1 renders this argument moot.

(b) Caldwell contends that trial counsel was ineffective by failing to object to the prosecutor's closing argument or, alternatively, by failing to request a curative instruction, that the prosecutor be admonished, or a mistrial declared. See Division 2, supra.

At the similar transaction hearing, Caldwell's trial counsel repeatedly objected to the admission of the similar transaction, arguing "having a child come before a jury and testify that her father allegedly abused her . . . is highly prejudicial." His trial counsel again objected to the admission of the similar transaction at trial, pointing out that the victim in the similar transaction is "[Caldwell's] daughter and . . . this evidence will unduly prejudice the jury and will deny [him] a fair trial." The record further reflects that trial counsel also requested a continuing objection "any time [the State] referred to it." At the hearing on the motion for new trial, trial counsel pointed out that she had objected vigorously throughout the trial and had asked the trial court for a standing objection regarding the similar transaction. She also said that "in closing argument it's always a tactical decision as to whether or not you are going to stand up and object, because quite often the jurors become quite upset with

you for having interrupted or continuously interrupted the trial."

"Trial strategy and tactics do not equate with ineffective assistance of counsel. Effectiveness is not judged by hindsight or by the result." (Citation and punctuation omitted.) *Etheridge v. State*, 210 Ga. App. 96, 98 (1) (435 SE2d 292) (1993). But even if counsel's performance fell outside the wide range of reasonable professional assistance, given the trial court's repeated limiting instructions regarding the similar transaction and the evidence of Caldwell's guilt, we conclude that Caldwell has failed to show that any deficiency so prejudiced his defense that a reasonable possibility exists that the trial's outcome would have been different but for that deficiency. See, e.g., *Milner v. State*, 271 Ga. 578, 579 (2), (3) (522 SE2d 654) (1999).

*Judgment affirmed. Andrews, P. J., and Ruffin, J., concur.*

DECIDED AUGUST 22, 2000 

*Howard J. Weintraub*, for appellant.

*J. Tom Morgan, District Attorney, Maria Murcier-Ashley, Assistant District Attorney*, for appellee.