A03A1002. WEATHERSBY v. THE STATE.
(587 SE2d 836)

PHIPPS, Judge.

Arnold Weathersby appeals his convictions of rape, statutory rape, aggravated child molestation, and child molestation[1] and asserts six errors: (1) the evidence was insufficient; (2) the trial court abused its discretion when it failed to declare a mistrial sua sponte; (3) the judge who presided over the trial should have heard his new trial motion; (4) the trial court abused its discretion when it removed a juror over his objection; (5) the statute authorizing the trial court to play a videotaped statement is unconstitutional; and (6) his trial counsel was ineffective. For reasons that follow, we affirm.

---

[1] Counts 2 through 4 merged into Count 1 for sentencing, and Weathersby was sentenced to 15 years to serve in prison.

The victim, T. R., who was twelve years old at the time of the incident and fifteen at the time of trial, testified that Weathersby lived in her neighborhood and that when she saw him after school one day, she approached him to say "hello." He told her that they had to get married and then asked if she was afraid to go into a vacant house. She said "okay" because he was a leader in the community and because she was familiar with the home as her aunt used to live there. While she was showing Weathersby the house, he told her again that they had to get married and asked whether she had ever had sex. When she said that she had not, he told her, "Well, you are going to have sex now," and kissed her. He laid her down, pulled her pants down to her boots, put her legs in the air, and raped her. She did not fight him because she was shocked and scared. She did constantly scream for help. She did not know if he ejaculated.

Afterward, he told her not to tell anyone and she left the house. Shortly after she got home, her mother arrived and she told her mother what had happened. When her uncle came home, they went to police headquarters and told Detective Bennett what had happened.

T. R.'s mother testified that when she arrived home from work on the day of the incident, her daughter appeared outside her car crying hysterically and told her that she had been raped by Weathersby in the abandoned house.

Bennett testified that T. R. told him a few hours after the incident that Weathersby "forced her to lay down and attempted to have sexual intercourse with her in the hallway of the house." He instructed T. R.'s mother to take her to a hospital for an examination. After receiving the physician's report, he instructed Investigator Weldon to search the abandoned house.

Weldon testified that when he searched the abandoned house that evening, he discovered Weathersby's checkbook on the hallway floor where T. R. said she had been raped. The checkbook contained entries for the same date as the incident.

The doctor who examined T. R. testified that T. R. told her that Weathersby "laid me down and put his penis in my vagina." She found an abrasion just inside T. R.'s vagina and on the area between her vagina and anus. The area leading into T. R.'s vagina "was particularly tender." In the doctor's opinion, the examination findings were consistent with T. R.'s description of what had occurred.

Weathersby testified that he saw T. R. on the day of the incident and asked her about a car abandoned on the street and whether she had any information about the owner of the abandoned house. He told her he was going to look inside the house and instructed her to go home because it was getting late. When he was exploring the upstairs area of the house, he heard a noise downstairs that startled

him. He turned quickly, bumped into the wall, and fell. He never saw T. R. in the house and denied raping or molesting her.

1. We find this evidence sufficient to support Weathersby's convictions under the standard set forth in *Jackson v. Virginia.*[2]

2. We find no merit in Weathersby's contention that the trial court erred by failing to sua sponte declare a mistrial after a state's witness allegedly commented on his right to remain silent. "It is well settled that a defendant cannot during trial ignore what he thinks to be an injustice, take his chance on a favorable verdict, and complain later."[3]

3. Weathersby claims the trial court erred by assigning a senior judge to rule on his motion for a new trial. We find no merit in this claim because OCGA § 5-5-43 authorizes a judge who did not try the case to decide a motion for new trial.[4]

4. Weathersby asserts the trial court erred when it removed a juror for cause over his objection. The record shows that the jury was selected at the end of the first day of Weathersby's trial. The next morning, one of the selected jurors informed the trial court and counsel that after thinking about the case overnight, she no longer believed that she could remain impartial. Because her husband had been arrested for sexual molestation in the same county, she worried about the impact her vote in Weathersby's case might have on the district attorney's decision to indict her husband and felt that this worry could affect her impartiality. The trial court removed her as a juror over Weathersby's objection.

OCGA § 15-12-172 authorizes a trial court to replace a juror "[i]f at any time, . . . a juror dies, becomes ill, upon other good cause shown to the court is found to be unable to perform his duty, or is discharged for other legal cause. . . ." "A trial judge may, in exercising [his] discretion, remove a juror and seat an alternate whenever [he] is convinced that the removed juror's ability to perform [her] duties is impaired."[5] Here, the trial court removed the juror because it found "she's just not capable of sitting as a juror and performing her duties and responsibilities." We find no abuse of discretion by the trial court in removing this juror.

---

[2] 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979). See also *Howard v. State*, 228 Ga. App. 784, 785 (1) (492 SE2d 759) (1997); *Mobley v. State*, 255 Ga. App. 263, 264 (1) (564 SE2d 851) (2002).

[3] *Burns v. State*, 240 Ga. 827, 829 (4) (242 SE2d 579) (1978) (trial court did not err by failing to grant mistrial sua sponte). See also *Caldwell v. State*, 245 Ga. App. 630, 632 (2) (538 SE2d 531) (2000); *Davis v. State*, 167 Ga. App. 764, 765 (2) (307 SE2d 546) (1983).

[4] See *Wallace v. Speed*, 93 Ga. App. 120, 121 (1) (91 SE2d 53) (1955).

[5] *Smith v. State*, 266 Ga. 827, 829 (2) (470 SE2d 674) (1996). See also *Cloud v. State*, 235 Ga. App. 721, 722 (1) (510 SE2d 370) (1998).

5. Weathersby asserts the trial court erred by allowing a video-taped interview of T. R. to be played pursuant to the Child Hearsay Statute.[6] He urges us to find the Child Hearsay Statute unconstitutional because it violates his equal protection rights. Because the Supreme Court has already considered this argument and rejected it, we find no error.[7]

6. Weathersby contends he should have a new trial because he received ineffective assistance of counsel. The two-prong test for determining the validity of a claim for ineffectiveness of counsel provided in *Strickland v. Washington*[8] asks whether counsel's performance was deficient and, if so, whether this deficiency prejudiced the defense; that is, whether there is a reasonable possibility that the outcome of the proceedings would have been different but for counsel's deficiency.[9] A trial court's finding that a defendant has not been denied effective assistance of trial counsel will be affirmed unless clearly erroneous.[10] "Although the Supreme Court in *Strickland* discussed the performance component prior to the prejudice component, it acknowledged that a court addressing the ineffective assistance issue is not required to approach the inquiry in that order or even to address both components if the defendant has made an insufficient showing on one."[11]

(a) Weathersby claims he was prejudiced by his trial counsel's failure to move for a mistrial after two separate comments by the state on his right to remain silent. The first comment, which occurred during the state's direct examination of Investigator Weldon in the state's case-in-chief, follows:

Q. Now, when you served the arrest warrant upon Mr. Weathersby, did you read him his rights?
A. Yes, we did.
Q. Did you interview him?
A. No, I didn't.

Weathersby's trial counsel made no objection or motion for a mistrial following this testimony.

The second comment occurred when the state called Weldon as a rebuttal witness after Weathersby testified that a police officer shook his checkbook in front of his face when the police came to his house to

---

[6] OCGA § 24-3-16.

[7] *Weathersby v. State*, 262 Ga. 126, 128 (4) (a) (414 SE2d 200) (1992). See also *Woodard v. State*, 269 Ga. 317, 318 (1) (496 SE2d 896) (1998).

[8] 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984).

[9] *Bruce v. State*, 252 Ga. App. 494, 498 (2) (555 SE2d 819) (2001).

[10] *Scapin v. State*, 204 Ga. App. 725 (420 SE2d 385) (1992).

[11] *Lajara v. State*, 263 Ga. 438, 440 (3) (435 SE2d 600) (1993).

arrest him. Weathersby also testified that the police questioned him about when he had last seen T. R.

The state's first questions to Weldon on rebuttal follow:

Q. Investigator Weldon, you were present when Mr. Weathersby was arrested; is that right?
A. Yes, sir.
Q. And you actually drew up the arrest warrant; is that right?
A. Yes, sir.
Q. And did you serve it on Mr. Weathersby?
A. Yes, I did.
Q. At the time that you served the arrest warrant, did you read him his rights?
A. Yes. I advised him of his *Miranda* rights at the time, and I asked him did he want to make a statement.
MR. PATTERSON: Your Honor, I object. Your Honor, I think that's clearly an improper answer that the officer would be giving.
MR. FRANKS: Your Honor, I will move on.
THE COURT: Thank you.

Investigator Weldon then testified that no one showed Weathersby the checkbook at the time he was arrested.

We find no error in the trial court's denial of Weathersby's motion for new trial. First, it is questionable whether the testimony Weathersby relies upon can be considered an impermissible comment on his right to remain silent.[12] Second, he cannot demonstrate that he was prejudiced by this testimony. It was not directed at any particular statement or defense offered by Weathersby.[13] Additionally, the evidence in this case did not rest solely upon the credibility of the victim and Weathersby.[14] Within hours of the rape, the police found Weathersby's checkbook in the hallway where T. R. said the rape occurred and a check had been written from it earlier that day. The doctor who examined T. R. within hours of the incident found abrasions and tenderness consistent with T. R.'s description of what had

---

[12] See *Dally v. State*, 237 Ga. App. 577, 579 (3) (516 SE2d 87) (1999) (holding that "the witness did not comment about [the defendant's] post-arrest silence but rather testified that he never questioned [the defendant]"); *Nichols v. State*, 210 Ga. App. 134, 138 (6) (435 SE2d 502) (1993) (holding defendant cannot claim violation of Fifth Amendment right to silence when he voluntarily testifies about his alleged statements to the police). Compare *Turner v. State*, 258 Ga. 97, 100-101 (4) (365 SE2d 822) (1988) (disapproving state's question about whether investigator had the opportunity to question defendant because "it approaches forbidden comment upon a defendant's right to remain silent").

[13] See *Burton v. State*, 191 Ga. App. 822, 823 (4) (383 SE2d 187) (1989).

[14] Compare *Gibbs v. State*, 217 Ga. App. 614, 616 (458 SE2d 407) (1995).

occurred. Thus, we cannot say that the outcome would have been different but for counsel's failure to move for a mistrial.

(b) Weathersby contends his trial counsel was ineffective for failing to investigate the substance of a conversation between T. R. and her mother after the rule of sequestration had been invoked. Weathersby fails, however, to demonstrate how he was prejudiced by his counsel's failure to investigate. Consequently, we find no basis for reversal.[15]

(c) Weathersby asserts that his trial counsel was ineffective because he failed to spend sufficient time with him before trial. We find no merit in this claim.[16] First, Weathersby's trial counsel testified that he "absolutely" spent sufficient time with Weathersby to prepare for trial, that he talked with him five times a week on the telephone, and that he met with him in person once every three or four weeks for ten minutes to one hour. Second, Weathersby fails to show how additional time with his trial counsel would have changed the outcome of his trial.

(d) We find no merit in Weathersby's assertion that his trial counsel failed to adequately investigate previous false allegations of rape by T. R. Trial counsel testified in the motion for new trial hearing that he did investigate and could not substantiate Weathersby's belief that T. R. had falsely accused others. In addition, Weathersby failed to show that additional investigation would have substantiated his belief and resulted in admissible evidence of previous false accusations by T. R.[17]

(e) Weathersby contends his trial counsel was ineffective because he violated the attorney-client privilege when he gave the state a copy of an e-mail Weathersby had sent to him. Weathersby testified that he provided a list of witnesses and a summary of their testimony to trial counsel and that he saw this list in the possession of the state during the trial. Trial counsel admitted that he had provided a copy of this e-mail to the state as part of the reciprocal discovery process and that he told Weathersby this information would be given to the state. Because Weathersby has failed to show how the outcome of this case would have been different if his counsel had not provided this list, we find no reversible error.[18]

(f) Weathersby asserts that his trial counsel was ineffective for failing to call character witnesses. The record shows that at the beginning of the trial, trial counsel informed the trial court that he and Weathersby had agreed, as a matter of trial strategy, not to call

---

[15] *Williams v. State*, 259 Ga. App. 742, 747 (7) (c) (578 SE2d 128) (2003).
[16] *Wright v. State*, 276 Ga. 419, 421-422 (5) (b) (577 SE2d 782) (2003).
[17] See *Banks v. State*, 250 Ga. App. 728, 729-730 (2) (552 SE2d 903) (2001).
[18] See generally *Thorne v. State*, 246 Ga. App. 741, 743 (2) (542 SE2d 157) (2000).

character witnesses because "we don't know whether the State has any character impeachment witnesses for this trial." Although trial counsel provided a different explanation in the new trial motion hearing, he also explained that he did not have his file with him and had not had an opportunity to review the trial transcript. When finding no ineffectiveness for failing to call character witnesses, the trial court credited the explanation made by trial counsel at the start of trial. Decisions about which witnesses to call are a matter of trial strategy, and tactical errors do not amount to ineffective assistance of counsel.[19]

*Judgment affirmed. Blackburn, P. J., and Ellington, J., concur.*

DECIDED SEPTEMBER 24, 2003.

*Maria Murcier-Ashley*, for appellant.
*Paul L. Howard, Jr., District Attorney, Elizabeth A. Baker, Assistant District Attorney*, for appellee.

---

[19] *Williams v. State*, 253 Ga. App. 453, 455 (1) (a) (559 SE2d 512) (2002).