301 Ga. 741
FINAL COPY

S17A0919.  KUHN v. THE STATE.

HUNSTEIN, Justice.

Appellant Curtis Todd Kuhn was tried and convicted of murder and related offenses in connection with the shooting death of his stepfather, Robert Donald "Don" May II.[1]  On appeal, Appellant claims that the evidence was insufficient to support his convictions and that he was entitled to have his original trial judge preside over his motion for new trial proceedings.  Finding no error, we affirm.

---

[1] On March 17, 2014, a Polk County grand jury indicted Appellant for the malice murder, felony murder predicated on aggravated assault, and aggravated assault of Robert Donald "Don" May II; Appellant was also indicted for one count of cruelty to children in the first degree for shooting the victim in front of a child. Following a trial from August 24-28, 2015, a jury found Appellant guilty on all counts; the trial court sentenced him to life for malice murder and 20 years concurrent for the cruelty charge.  The felony murder was vacated by operation of law, and the aggravated assault merged with malice murder for sentencing purposes.

Appellant timely filed a motion for new trial on October 27, 2015, and, after a hearing, the trial court denied the motion on August 2, 2016.  Appellant timely filed a notice of appeal.  This appeal was docketed to the April 2017 term of this Court and was thereafter submitted for a decision on the briefs.

1.    Viewed in the light most favorable to the jury's verdict, the evidence adduced at trial established that, on September 30, 2013, Appellant was living in Polk County, Georgia, with his mother, Bonnie May, his stepfather, Don, his brother, Rusty Kuhn, his brother's girlfriend, Danielle Garcia, and their minor child.

That evening, after the group had been drinking, Bonnie and Danielle stood in the driveway of the family home and began to argue. Don, Rusty and Appellant all went outside to check on the women; Rusty eventually involved himself in the argument. Bonnie became upset at the family's interference and, after some additional back and forth, she eventually went inside the house to get ready for bed; everyone else, including Danielle's minor child, remained outside. Shortly thereafter, shots were fired between Don and Appellant. After hearing the shots, Rusty tackled Don to the ground, and Don fell face first onto the driveway; Rusty quickly stood back up, and thereafter saw Appellant shoot Don in the back.

When officers arrived at the scene, they located ten spent shell casings — five were shot from Appellant's .40 caliber Glock and five from Don's 9 mm H & K. The .40 caliber casings were located in a grassy area next to the driveway,

and the 9 mm casings were strewn throughout the driveway. The guns were later found inside a trashcan. Don was lying between the two areas where the casings were located; he had suffered multiple gunshot wounds. Appellant had sustained a gunshot wound to his upper right arm.

Don was transported to the hospital where he later died. During the autopsy, the medical examiner located five gunshot wounds on Don's body, four of which were entrance wounds located on his back; the fifth was an entrance wound to his palm. Don also had scrapes and bruises on his face and arm, consistent with being knocked to the ground face first. The medical examiner concluded that the gunshot wounds to Don's back caused his death.

At trial, the State called GBI Special Agent Murphy during its case-in-chief and qualified him as a crime scene expert. Based upon his processing of the crime scene, the autopsy report, and the witness statements provided to law enforcement, Agent Murphy concluded that Don was backing away from Appellant during the exchange of gunfire and, after Rusty tackled Don to the ground, Appellant approached Don and shot him in the back four times.

The State also introduced Appellant's interviews with law enforcement. Appellant told police that he acted in self-defense in shooting his stepfather and, although there were inconsistencies within these statements as to how the events unfolded, he maintained he had acted in self-defense.

Appellant presented witnesses and testified in his own defense at trial, once again claiming that he had defended himself the night of the shooting. Defense counsel also called a crime scene expert to rebut the testimony of Special Agent Murphy. Namely, the defense's expert opined that Appellant fired the shots while lying in the grassy area next to the driveway, and that Don's gunshot wounds to the back occurred while he was falling to the ground after being tackled by Rusty.

Appellant argues that the evidence relied upon by the State was insufficient to support his convictions and sentences. When evaluating the sufficiency of evidence, the proper standard for review is whether a rational trier of fact could have found the defendant guilty beyond a reasonable doubt. See Jackson v. Virginia, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979). "'This Court does not reweigh evidence or resolve conflicts in testimony; instead, evidence is reviewed in a light most favorable to the verdict, with deference to

4

the jury's assessment of the weight and credibility of the evidence.'" (Citation omitted.) Hayes v. State, 292 Ga. 506, 506 (739 SE2d 313) (2013).

The issues raised by Appellant — i.e., witness credibility and inconsistent testimony — go to the weight of the evidence against him, which is a question for the jury to decide, not this Court. See Thomas v. State, 300 Ga. 433 (1) (796 SE2d 242) (2017); Shaw v. State, 292 Ga. 871, 872 (742 SE2d 707) (2013) ("Likewise, the issues of witness credibility and justification are for the jury to decide, and the jury is free to reject a defendant's claim that he acted in self-defense." (citation and punctuation omitted)). Based on the foregoing, the evidence authorized the jury to find Appellant guilty beyond a reasonable doubt of the crimes for which he was convicted.

2. Appellant further alleges that the motion for new trial judge erred by denying his request to have the trial judge preside over his motion for new trial hearing. We disagree. As an initial matter, the judge who presided over the motion for new trial hearing was originally assigned to Appellant's criminal case and presided over his pre-trial immunity hearing, which involved evidence and testimony similar to that presented at trial. Appellant's reliance on OCGA

§ 5-5-43[2] is also unavailing.  The statute clearly authorizes a judge who did not try a case to preside over and decide a motion for new trial.  See State v. Harris, 292 Ga. 92, 95 (734 SE2d 357) (2012); Weathersby v. State, 263 Ga. App. 341 (3) (587 SE2d 836) (2003).  Accordingly, there is no error.

Judgment affirmed.  All the Justices concur.

Decided August 14, 2017.

Murder. Polk Superior Court. Before Judge Lim.

Karen S. Wilkes, for appellant.

Oliver J. Browning, Jr., District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Vanessa T. Meyerhoefer, Assistant Attorney General, for appellee.

---

[2] A judge who did not try the case may, if presented with a motion for new trial within 30 days from the date of the verdict or judgment sought to be set aside, allow the filing of, issue rule nisi thereon, and decide the motion either where he is presiding in the court in which the trial was had, or where he is named in the rule, or where he is otherwise authorized by law to do so.