302 Ga. 576
FINAL COPY

S17A0949. DAVIS v. THE STATE.

HINES, Chief Justice.

Following the denial of his motion for new trial, as amended, Darius Jamal Davis appeals his convictions and sentences for malice murder, criminal attempt to commit armed robbery, aggravated assault with a deadly weapon, possession of a firearm by a convicted felon, and possession of a firearm during the commission of a felony in connection with the fatal shooting of Anton Johnson and the wounding of Jamal Makanjoula. Davis challenges the trial court's permitting cross-examination of alibi witnesses about prior altercations with him, the failure of the trial court to give a limiting instruction regarding the evidence of prior altercations, the admission into evidence of certain other testimony at trial, and the effectiveness of his trial counsel. Finding the challenges to be without merit, we affirm.[1]

---

[1] The crimes occurred on January 16, 2013. On April 26, 2013, a Fulton County grand jury returned a twelve-count indictment against Davis, Armond Gibson, Clifford Harris, and Rolandus

Construed to support the verdicts, the evidence showed the following. Coindictees Armond Gibson, Rolandus White, and Clifford Harris discussed how they could make money on a stolen television; Harris needed to sell it quickly in order to make a payment involved in his probation. In an attempt to find a buyer, Harris drove the men around in his sister-in-law's red Pontiac

Deandre White: Count 1 (Davis, Gibson, Harris, White) - the malice murder of Johnson by fatally shooting him with a handgun; Count 2 (Davis, Gibson, Harris, White) - the felony murder of Johnson during the commission of criminal attempt to commit armed robbery; Count 3 (Davis, Gibson, Harris, White) - the felony murder of Johnson during the commission of his aggravated assault; Count 4 (Davis, Gibson) - the felony murder of Johnson during the commission of possession of a firearm by a convicted felon; Count 5 (White) - the felony murder of Johnson during the commission of possession of a firearm by a First Offender probationer; Count 6 (Davis, Gibson, Harris, White) - the criminal attempt to commit armed robbery of Johnson; Count 7 (Davis, Gibson, Harris, White) - the aggravated assault with a deadly weapon of Johnson; Count 8 (Davis, Gibson, Harris, White) - the aggravated assault with a deadly weapon of Makanjoula; Count 9 (Davis) - possession of a firearm by a convicted felon; Count 10 (Gibson) - possession of a firearm by a convicted felon; Count 11 (White) - possession of a firearm by a First Offender probationer; and Count 12 (Davis, Gibson, Harris, White) - possession of a firearm during the commission of a felony. Davis was tried before a jury March 26 - April 1, 2014, and found guilty of all charges against him. On April 2, 2014, Davis was sentenced to life in prison on Count 1; five years in prison on Count 8, to be served consecutively to the sentence on Count 1; and five years in prison on Count 12, to be served consecutively to the sentence on Count 8. For the purpose of sentencing, the verdicts on Counts 2, 3, 4, 6, and 7 were found to merge with Count 1 and the verdict on Count 9 was found to merge with Count 4. A motion for new trial was filed by trial counsel on April 2, 2014, and new counsel filed an amended motion for new trial on April 1, 2016. Following a hearing in the matter, the motion for new trial, as amended, was denied on October 7, 2016; however, the trial court ordered that Davis be re-sentenced due to the improper merging of his sentences. On November 15, 2016, Davis was re-sentenced to life in prison on Count 1; ten years in prison on Count 6, to be served concurrently with the sentence on Count 1; five years in prison on Count 8, to be served consecutively to the sentence on Count 1; five years in prison on Count 9, to be served consecutively to the sentence on Count 8; and five years in prison on Count 12, to be served consecutively to the sentence on Count 9. The verdicts on Counts 2, 3, and 4 stood vacated by operation of law. Counsel filed a notice of appeal on November 7, 2016, and an amended notice of appeal on November 28, 2016. The case was docketed to the April 2017 term of this Court, and the appeal was orally argued on June 19, 2017.

Grand Prix and at one point they stopped in West End to offer the television to a restaurant employee known to Gibson.  They could not make the sale and as they were leaving the restaurant they ran into Davis and another man.  Davis and the other man said that they were trying to rob someone who sold drugs, and that they had successfully robbed him in the past.  Davis described the potential robbery as "sweet."  Gibson was concerned that the potential robbery victim might be armed, so he volunteered to enter the target's shop to see if that was the case.  Harris walked back to the car while the others walked to a nearby tattoo shop.  Gibson entered the shop first, let in by employee Makanjoula; the shop was kept locked because three weeks earlier the shop owner, Johnson, was shot and robbed in his apartment, and also the shop had previously been the scene of a robbery.

Gibson approached Johnson, asking about his rates, and at some point during this exchange, Gibson received a call from Harris. Five to fifteen minutes later, as Gibson was walking to the door to leave,  Davis, who was wearing a dark blue hoodie,  and White approached outside the door. The two men were let inside the shop, and one of them drew a handgun and said, "Give it up!" Davis and White each had a handgun. As Johnson attempted to reach for a

3

handgun he kept in the shop, Davis fired multiple shots, hitting Johnson and Makanjoula.  Davis, Gibson, and White fled the shop together, ran to the car, got inside, and told Harris to drive away.  Moments later, Davis got a call and then informed the group "one alive and one dead."  Gibson and White asked Davis why he shot Johnson, and Davis replied, "He moved.  That's the procedure when you move."

When police arrived at the crime scene, they found Johnson dead; he had sustained two gunshot wounds - one to his head and the other to his torso.  The shot causing the torso wound entered through his back, and the murder weapon was likely fired from over three feet away.  Makanjoula was shot in the shoulder.  Police found three ounces of marijuana and ten grams of methamphetamine in the tattoo shop, and over a thousand dollars in Johnson's pocket.  A license plate number provided by a witness was substantially similar to that of the red Pontiac driven by Harris.

After Harris was arrested, Gibson and White went to Harris's apartment and told his girlfriend that White, Gibson, and Davis went into the tattoo parlor without Harris and that Davis was the one that killed somebody.

When Davis and Harris were housed in jail together, Davis threatened

4

Harris; he asked Harris if he wanted to change his story, and said that "all rats must die."

1. Davis does not contest the legal sufficiency of the evidence of his guilt. Nevertheless, as is this Court's general practice in appeals of murder cases, we have reviewed the record and conclude that the evidence at trial was sufficient to enable a rational trier of fact to find Davis guilty beyond a reasonable doubt of the crimes of which he was convicted. *Jackson v. Virginia*, 443 U.S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

2. Davis contends that the trial court abused its discretion in permitting the State to cross-examine his mother and sister, who were his alibi witnesses, about prior altercations with his family and consequent interventions by police. He argues that such questioning improperly put his character at issue to his prejudice and that the resulting testimony was inadmissible under OCGA § 24-4-404 (b) ("Rule 404 (b)"),[2] and if not improper under Rule 404 (b), then

[2]OCGA § 24-4-404 (b) provides:

> Evidence of other crimes, wrongs, or acts shall not be admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, including, but not limited to, proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. The prosecution in a criminal proceeding shall provide reasonable notice to the defense in advance of trial, unless pretrial notice is excused by the court upon good cause shown, of the

inadmissible under OCGA § 24-4-403 ("Rule 403").[3] But, the argument is unavailing.

Davis called his mother and his sister to testify to establish his alibi defense. Collectively, the women testified on direct examination that on January 16, 2013, Davis went to school and was home by 5:15 p.m. or 5:30 p.m.; that his girlfriend came over around 7:30 p.m.- 8:00 p.m. and that Davis and his girlfriend walked in the neighborhood and were home by 9:00 p.m.; that Davis was home the entire time between 5:00 p.m.-7:30 p.m., when the shooting occurred; that Davis's mother took him to school every day because he did not have a car; that they left roughly around 8:15 every morning; and that Davis and his girlfriend usually walked up and down the street or went to the park

---

general nature of any such evidence it intends to introduce at trial. Notice shall not be required when the evidence of prior crimes, wrongs, or acts is offered to prove the circumstances immediately surrounding the charged crime, motive, or prior difficulties between the accused and the alleged victim.

[3]OCGA § 24-4-403 provides:

Relevant evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

together. When the mother was asked how she remembered the events of January 16, 2013, as they related to Davis, she answered, "[b]ecause that was a daily routine. Nothing changed, period." The mother further testified that she did not contact the police with the alibi information at the time of her son's arrest because she felt that it would not have made a difference and that she was waiting to relate the information at trial; the sister also testified that she did not call the police to provide any of this alibi information because she was waiting until Davis had his day in court.

On cross-examination of Davis's mother, the State sought to explore her statement that providing the alibi information to police would not have made a difference; the State offered that the reason she felt that way was because she had called the police on numerous occasions regarding altercations involving Davis and that in her view it had not made any difference. The mother responded that she felt that the police "just don't do the job." Defense counsel objected on the basis of relevance, arguing that such questioning was just a way for the State to get in bad character evidence, which would be prejudicial to Davis. The State responded that the sought testimony was relevant to test the mother's knowledge as to where her son was on specific dates based on police

7

reports of Davis beating her or another family member; the State wanted to demonstrate that the mother generally did not know about Davis's whereabouts and to show her bias and lack of veracity, specifically that she was afraid of physical consequences at the hand of her son if she did not testify favorably for him. The trial court overruled the objection and permitted the questioning. The State then cross-examined the mother and sister about various incidents, asking whether the witness knew where Davis was on a given date and/or time; although the State mentioned a few specifics of some of the incidents the focus was on whether the witness knew where Davis was on the date in question, and whether it was credible that Davis was living with his mother and/or sister at the time of the crimes on trial because of Davis's history of altercations with his family.[4]

---

[4]The other incidents of specific dates mentioned collectively in cross-examination of Davis's mother and sister were:

1) March 14, 2007 - altercation between Davis and his mother in which he allegedly punched his mother with a closed fist, causing swelling in her eye and her forearm;

2) September 13, 2007 - altercation between Davis and a cousin of the mother with whom Davis was living at the time;

3) December 8, 2007- altercation between Davis and his mother in which Davis threw a brick through the rear driver's side window of his mother's vehicle;

4) February 4, 2008 - unspecified incident involving Davis in the general area of the crimes on trial;

5) August 27, 2009 - altercation between Davis and his mother;

6) October 4, 2009 - unspecified incident involving Davis;

7) January 23, 2010 - incident between Davis and his mother in which he kicked in the front

First, in objecting below to the cross-examination, Davis did not invoke

the provisions of either Rule 404 (b) or Rule 403 regarding alleged other acts.

See *Gibbs v. State*, 341 Ga. App. 316, 318 (1) (800 SE2d 385) (2017).

Accordingly, his argument is considered under plain-error review,[5] and the

argument fails. The general requirements for the admission of evidence of other

acts under Rule 404(b) are relevance to an issue other than character,

admissibility to the extent that the evidence is sufficient to permit a jury to

---

door of the residence;
8) March 4, 2010 - incident involving Davis and a vehicular accident;
9) April 1, 2011 - unspecified incident involving Davis at Grant Park Commons;
10) September 14, 2011- altercation between Davis and his mother;
11) December 5, 2011- incident involving Davis and his sister, in which it was reported that Davis had beaten his sister;
12) September 6, 2012 - incident in which Davis was allegedly "basically attacking everybody in the family," including his sister;
13) October, 2012 - incident of police intervention involving Davis, the mother, and the mother's brother;
14) December 17, 2012- incident involving Davis requiring police intervention; and
15) January 16, 2013- incident in which a woman reported that Davis had stayed at her home the previous night and then had stolen a gaming console from her apartment in the morning.
On cross-examination, Davis's mother was also asked why her son was not staying with her on February 14, 2013.

[5]The standard for a plain-error review of rulings on evidence is that there must be an error or defect that has not been affirmatively waived by the appellant, the legal error is clear or obvious, the error must have affected the appellant's substantial rights, and if the aforementioned three requirements are satisfied, the appellate court has the discretion to remedy the found error but should do so only if the error seriously affected the fairness, integrity or public reputation of the judicial proceedings; consequently, beyond showing a clear or obvious error, the appellant must affirmatively show that the error probably did affect the outcome below. *Gates v. State*, 298 Ga. 324, 327 (3) (781 SE2d 772) (2016).

conclude by a preponderance of proof that the defendant actually committed the other acts, and passing muster under Rule 403, which weighs the relevance of evidence of other acts against, inter alia, unfair prejudice to the defendant; application of the bar of Rule 403 is principally a matter of the trial court's discretion but is an extraordinary remedy which should be used only sparingly. *Olds v. State*, 299 Ga. 65, 69-70 (2) (786 SE2d 633) (2016).

Here, the purpose of the cross-examination was not to introduce into evidence other acts or transactions involving Davis for the uses outlined in Rule 404 (b). Indeed, the incidents briefly described in cross-examination were not similar to the crimes on trial; rather, they were examples of family violence involving or known by Davis's mother and/or sister. The cross-examinations of the mother and sister were for the purpose of impeaching their testimony about Davis's whereabouts at the time of the crimes on trial and demonstrating their motives for offering alibi testimony, i.e., that they feared violent reprisal from Davis. While Rule 404 (b) is applicable to impeachment evidence,[6] the rule did not prevent the cross-examination at issue. Indeed,

> [i]t is proper for the State when cross-examining a defense witness

---

[6]See *United States v. Bradley*, 644 F3d 1213, 1273 (III) (B) (1) ( c ) (11th Cir. 2011).

10

to bring out the relationship between the witness and the accused for the purpose of showing bias or to show the probability that the witness is testifying out of fear or under duress.

*Rivers v. State*, 296 Ga. 396, 402 (6) (768 SE2d 486) (2015) (Internal citation omitted). The fact that the evidence may have incidentally placed Davis's character in issue did not proscribe it. Id. And regarding Rule 403, given the strength of this evidence it cannot be said that the danger of unfair prejudice substantially outweighed the value of the sought impeachment evidence.

3. Davis further contends that the trial court plainly erred by failing to issue a limiting instruction to ensure that the jury did not consider evidence related to Davis's prior altercations with his family involving the police as evidence of his guilt of the crimes on trial. He argues that Rule 404 (b) evidence is properly admissible only when a limiting instruction is given, and that such instruction was necessary in this case in order to cure the prejudicial effect of the evidence. He acknowledges that there was no request below for a limiting instruction but urges that this Court conduct a review for plain error.

The failure to give a limiting instruction was not plain error in this case.

11

As noted, in order for there to be plain error,

> [f]irst, there must be an error or defect — some sort of [d]eviation from a legal rule — that has not been intentionally relinquished or abandoned, i.e., affirmatively waived, by the appellant. Second, the legal error must be clear or obvious, rather than subject to reasonable dispute. Third, the error must have affected the appellant's substantial rights, which in the ordinary case means he must demonstrate that it affected the outcome of the [trial] court proceedings. Fourth and finally, if the above three prongs are satisfied, the [appellate court] has the *discretion* to remedy the error — discretion which ought to be exercised only if the error seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.

*State v. Kelly*, 290 Ga. 29, 33 (2) (718 SE2d 232) (2011). Davis does not satisfy the test for plain error. In order to prevail on this third element of prejudice, Davis has the burden to "make an affirmative showing that the error probably did affect the outcome below." *Gates v. State*, 298 Ga. 324, 327 (781

SE2d 772) (2016) (Citation and punctuation omitted). This Court has equated this part of the plain-error standard with the prejudice prong of the test for an ineffective assistance of counsel claim. See *Martin v. State*, 298 Ga. 259, 277-278 (779 SE2d 342) (2015). Indeed, this showing requires "some level of certainty and particularity." *Hampton v. State*. 302 Ga. 166, 169 (2) (805 SE2d 902) (2017), quoting *United States v. Bramley*, 847 F3d 1, 7 (1st Cir. 2017). And, Davis simply has not met his burden in light of the strong evidence against him at trial, which included eyewitness identifications of him as a would-be armed robber.

4. Davis next contends that the trial court erred by permitting, over objection, Harris's then girlfriend to testify that White told her that Davis was the shooter. But, there was no error in admitting the testimony.

The coconspirator exception to the admission of hearsay contained in OCGA § 24-8-801 (d) (2) (E) ("Rule 801 (d) (2) (E)") governs here. It provides that an admission, i.e., "a statement offered against a party" is not to be excluded under the hearsay rule if it is

[a] statement by a coconspirator of a party during the course and in

furtherance of the conspiracy, including a statement made during the

concealment phase of a conspiracy. A conspiracy need not be charged in order to make a statement admissible under this subparagraph.

Thus, Rule 801 (d) (2) (E) provides explicitly that a statement made during and in furtherance of a conspiracy, including a statement made during the concealment phase of a conspiracy is admissible in evidence.

Davis urges that there was no conspiracy or concealment phase of a conspiracy at the time the statement was made. However, a conspiracy may be established when conduct discloses a common design, even without proof of an express agreement between the parties. *Grissom v. State*, 296 Ga. 406, 409 (1) (768 SE2d 494) (2015). The statement of a coconspirator is admissible when the State establishes a prima facie case of conspiracy independent of the coconspirator's statement before the close of the evidence at trial. Id. at 410 (2).

Here, there was ample evidence of a conspiracy among Davis and his three coindictees to go to the tattoo shop to commit a robbery, including a concealment phase. The four men discussed committing the robbery just prior to the shootings, and each member had a role in it. Gibson was the

14

lookout, Davis and White were the armed robbers, and Harris provided the transportation to the crime scene and was the getaway driver. All four men left the scene together, and Davis and the declarant White discussed the fatal incident after its occurrence. White's statement to Harris's girlfriend was made when only Harris had been arrested, and was in conjunction with other statements attempting to communicate to Harris through his girlfriend that the group would be looking out for him; therefore, the statement was actually made in an attempt to keep the members of the conspiracy united, thus preserving or furthering it. See *United States v. Holt*, 777 F3d 1234, 1267 (11th Cir. 2015) (liberal standard applied in determining whether statement is in furtherance of a conspiracy; statement need only have furthered interests of the conspiracy in some way including if statement could have been intended to affect future dealings between the parties).

Even if the statement to Harris's girlfriend was deemed to be outside the coconspirator exception to hearsay, its admission into evidence was harmless as it was merely cumulative of other evidence at trial including testimony from Gibson, Harris, and victim Makanjoula that Davis was the shooter.

5. At the time of the shooting, a woman, N. N., was stopped at a nearby

15

stoplight and saw a flash of light, heard a loud popping noise, and witnessed people running in the middle of the street by the tattoo parlor. She saw a man matching Davis's physical description and dress firing a handgun. She then saw three men fleeing and getting into a red Grand Am or Grand Prix automobile. She called the police and gave them the number on the red car's license plate. Later, during a photographic lineup, N. N. identified Harris as the driver of the vehicle. During another photographic lineup, she stated that Davis and another man "looked familiar," but could not make a positive identification; she said that Davis possibly was one of the men she saw running to the red car.

Davis contends that the trial court abused its discretion under Rule 403 by admitting N. N.'s statement that he "looked familiar," because it was unduly prejudicial to him and minimally probative of whether he committed the crimes as he could have "looked familiar" for any number of reasons, there was contradiction in her testimony regarding Davis's role, there was inconsistency and confusion in her physical descriptions of the three men, and there was no credibility in regard to her description of Davis.

First, matters of witness credibility and inconsistency in testimony affect the weight the evidence is to be given at trial and are questions for the jury to

16

determine, not this Court. *Kuhn v. State*, 301 Ga. 741 (804 SE2d 9) (2017).

Second, Davis did not object to this testimony at trial on the basis of Rule 403, so any review of his present complaint is one of plain error, and plain error has not been shown. See footnote 5, supra. There is no clear or obvious legal error, much less any affirmative showing by Davis that the subject testimony affected the outcome of his trial. See *Gates v. State*, 298 Ga. 324, 327 (3) (781 SE2d 772) (2016). As noted, there was testimony from at least three other witnesses at trial that Davis was not only one of the armed robbers but was, in fact, the shooter. See Division 4, supra. Thus, there is no support for a finding of the danger of unfair prejudice as contemplated by Rule 403.

6. Finally, Davis contends that his trial counsel provided ineffective assistance under *Strickland v. Washington*, 466 U.S. 668 (104 SCt 2052, 80 LE 2d 674) (1984). He urges that counsel's alleged errors permeated the trial, and while the prejudice resulting from each error individually provides a sufficient basis for reversal, this Court should consider the combined prejudice resulting from such errors. See *Schofield v. Holsey*, 281 Ga. 809 (642 SE2d 56) (2007). However, in order for Davis to prevail on his claim of ineffective assistance of trial counsel, he must show that counsel's performance was deficient and that

17

such deficiency prejudiced him so that a reasonable probability exists that, but for counsel's errors, the outcome of his trial would have been different. *Menefee v. State*, 301 Ga. 505 (801 SE2d 782) (2017). And, this is to be done in the face of the strong presumption that counsel's actions fall within the broad range of professional conduct. Id. Davis does not carry his burden.

a) Davis first claims that his trial counsel was ineffective for not objecting to the introduction of the alleged Rule 404 (b) evidence, i.e., the impeachment of the alibi witnesses, for lack of notice.[7] However, Davis cannot show the ineffectiveness of his trial counsel on the basis urged. When a defendant fails to demonstrate one prong of the two-prong *Strickland* test, then there is no need to examine the other prong. *Gomez v. State*, 300 Ga. 571, 573 (797 SE2d 478) (2017). Here, Davis simply cannot show the reasonable probability that, but for the attempt at impeachment of the alibi witnesses, the outcome of his trial would

---

[7]In denying Davis a new trial, the trial court found that the cross-examination was intrinsic to Davis's alibi and relevant for purposes other than showing his character, and thus, Rule 404(b) and its notice requirement were inapplicable; that prior to trial the State had only the written notice of alibi, which did not describe the alibi with any meaningful detail, and the State developed its cross-examination of the alibi witnesses and rebuttal of the alibi during trial after it was revealed what the alibi specifically was; and that even had the State been required to provide notice under normal circumstances, the State's inability to provide pretrial notice would have been excused under these facts.

have been different. The evidence of his guilt was overwhelming, including Davis's own statements and behavior following the crimes and the eyewitness identifications of Davis, which included the in-court identification by the surviving shooting victim.

b) Davis claims that his trial counsel was ineffective for failing to adequately investigate his alibi defense prior to calling the alibi witnesses to testify because based solely on information that trial counsel had available to her in her own file, she should have known that the alibi testimony presented by Davis's mother and sister was subject to serious impeachment. But, counsel's actions have not been shown to be deficient given what was affirmatively told to her and withheld from her by Davis and his family. At the motion-for-new-trial hearing, trial counsel testified that neither Davis nor his family members mentioned a history of violence within the family. Counsel testified that she would have requested police reports had she been informed that they were relevant. Counsel had no reason to suspect that Davis's alibi would fail given the information she was provided by Davis and his mother and sister. And, most significantly, they did not inform counsel that there was a temporary restraining order in place which had prevented Davis from being at the family home in a

time frame prior to the crimes on trial.

c) Davis further claims that trial counsel was ineffective for presenting evidence that opened the door to evidence of his prior altercations with his family, which resulted in prejudice to him. But, counsel had no reason to suspect that Davis's alibi defense would be undermined because of the limited information she was given.

d) Lastly, Davis claims that his trial counsel was ineffective for failing to request a limiting instruction that would preclude the jury from considering the evidence of Davis's prior familial disputes as evidence of his guilt of the crimes charged. He urges that he was prejudiced because if the jury's consideration of the Rule 404 (b) evidence would have been properly confined to the purposes of such rule, there is a reasonable probability that the result of his trial would have been different. But as noted, Davis has not shown that the lack of a limiting instruction affected the outcome of his trial. See Division 3, supra.

Inasmuch as Davis has failed to demonstrate any prejudice resulting from counsel's alleged errors, his reliance on *Schofield v. Holsey* for the proposition that the cumulative effect of the alleged errors warrants reversal is meritless. *Schofield v. Holsey,* supra at 812 (II), n.1; see *Perez v. State*, 331 Ga. App. 164,

20

170 (3) (e) (770 SE2d 260) (2015).

Judgment affirmed.  All the Justices concur.

Decided October 2, 2017 – Reconsideration denied November 14, 2017.

Murder. Fulton Superior Court. Before Judge Adams.

Strickland Webster, Leigh Ann Webster, for appellant.

Paul L. Howard, Jr., District Attorney, Lyndsey H. Rudder, Kevin C. Armstrong, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Elizabeth M. Haase, Assistant Attorney General, for appellee.