296 Ga. 573
FINAL COPY

S14A1937.  WILLIAMS v. THE STATE.

HINES, Presiding Justice.

Frankie Williams appeals the denial of his motion for new trial and his conviction and sentence for malice murder in connection with the fatal drive-by shooting of Jerry Bodiford, Jr.  He challenges the sufficiency and weight of the evidence of his guilt.  Finding the challenge to be without merit, we affirm.[1]

Williams contends that the evidence was insufficient to show that he directly committed the murder or was a party to it, and, as he did in his motion for new trial, he maintains that the verdicts were decidedly and strongly against the weight of the evidence.  Whether an appellant is asking this Court to review the legal sufficiency of the evidence or a trial court's refusal to grant a new trial on the general grounds, this Court must review the case under the standard set

---

[1] The shooting occurred on July 27, 2011.  On December 8, 2011, a Grady County grand jury returned an indictment against Williams and Shadrick Killens charging them with malice murder, felony murder while in the commission of aggravated assault, and aggravated assault.  Williams, together with Killens, was tried before a jury June 18-19, 2012, and was found guilty of all charges.  On June 20, 2012, Williams was sentenced to life in prison for the malice murder; the aggravated assault was found to merge with the malice murder for the purpose of sentencing and the felony murder verdict stood vacated by operation of law.  A motion for new trial was filed on July 12, 2012, and the motion was denied on May 8, 2014.  A notice of appeal was filed on June 3, 2014, and the case was docketed in this Court's September 2014 term.  The appeal was submitted for decision on the briefs.

forth in *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979), that is, if the evidence viewed in the light most favorable to the prosecution, supports the verdict or verdicts. *Lewis v. State*, 296 Ga. 259 (765 SE2d 911) (2014).

In this case, the evidence construed in favor of the State showed the following. On July 27, 2011, Williams arranged for co-defendant Killens to drive him from Thomasville, where both defendants resided, to Cairo to visit Williams's girlfriend, Angelica Gilley. Upon arrival at Gilley's residence, they encountered Quanterian Davis. Williams believed that Davis was pursuing Gilley romantically, and an altercation ensued between Davis and Williams.

The altercation began when Davis, who was also a neighbor of Gilley, walked by Gilley's porch where Gilley, Williams, and Killens were talking. Davis turned around when he heard his name. Davis and Williams started to argue because Gilley wanted to talk to Davis. Williams stood and "acted as if he was going to take his shirt off," and as the altercation became heated, Gilley tried to push Williams inside her home. Davis called Williams a "punk," and Williams commented "I am going to kill that n _ _ _ _ _." Killens stated "he had five shots" for Davis. Davis left and met Bodiford, with whom he talked on a

daily basis, and he told him about the altercation with Williams. Williams and Killens also left the Gilley residence in their vehicle. However, Williams and Killens returned shortly thereafter and attempted to convince Gilley to leave with them. While Williams and Killens were absent, Gilley's sister texted Davis and asked him to return. Although Davis believed the altercation was over, Bodiford returned with Davis to "make sure everything was all right." Killens had been seen with a handgun earlier that day.

Davis and Bodiford returned to the Gilley residence and were standing around with several others when Williams and Killens approached in their vehicle; Davis then felt that something was not right, that his being summoned to the residence might be a "trap." Killens was in the driver's seat, and Williams was in the passenger's side with the "seat all the way back." As Williams and Killens drove away, shots were fired from inside the car through the lowered passenger window; Davis saw Williams holding a handgun out of that window. The driver's side window was closed. Shell casings were found inside the vehicle in the back floorboard passenger side and in the center console. As Bodiford turned to flee, he was fatally wounded by a bullet which entered under his arm and into his right posterior-lateral chest. The bullet removed from

3

Bodiford was consistent with the .25 caliber shell casings found in the vehicle.

During the initial interview of Williams by agents of the Georgia Bureau of Investigation, Williams denied knowing anything about the shooting. At a second interview, Williams gave a location where he said the murder weapon might be recovered, but the weapon was not found even though the area was searched three times. A .25-caliber handgun was found in Bodiford's back pocket at the hospital where he was taken; however, witnesses to the shooting never saw Bodiford with a handgun.

Williams argues that the jury could not have found that he directly committed the murder because Killens admitted to law enforcement that he fired his own weapon, and then testified at trial that he was the one that fired the handgun and that he did so in self-defense. But, there was other witness testimony to the contrary. And, it is the role of the jury as the fact-finder to resolve any conflicts in the evidence and to determine questions of witness credibility. *Faulkner v. State*, 295 Ga. 321, 322 (1) (a) (758 SE2d 817) (2014). Even if the jury concluded that Killens fired the handgun, there was ample evidence that Williams was "concerned in the commission" of the murder, and

4

thus, he was legally culpable for it. OCGA § 16-2-20;[2] *Williams v. State*, 291

Ga. 501, 504 (1) (c) (732 SE2d 47) (2012).

The evidence was sufficient to enable a rational trier of fact to find

Williams guilty beyond a reasonable doubt of malice murder. *Jackson v.*

*Virginia,* supra.

Judgments affirmed. All the Justices concur.

Decided February 16, 2015.

Murder. Grady Superior Court. Before Judge Cato.

Billy M. Grantham, for appellant.

Joseph K. Mulholland, District Attorney, Moruf O. Oseni, Assistant

District Attorney, Samuel S. Olens, Attorney General, Patricia B. Attaway

---

[2] OCGA § 16-2-20 provides:

> (a) Every person concerned in the commission of a crime is a party thereto and may be charged with and convicted of commission of the crime.
> (b) A person is concerned in the commission of a crime only if he:
> > (1) Directly commits the crime;
> > (2) Intentionally causes some other person to commit the crime under such circumstances that the other person is not guilty of any crime either in fact or because of legal incapacity;
> > (3) Intentionally aids or abets in the commission of the crime; or
> > (4) Intentionally advises, encourages, hires, counsels, or procures another to commit the crime.

Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney

General, Ryan A. Kolb, Assistant Attorney General, for appellee.