300 Ga. 433
FINAL COPY


S16A1520.  THOMAS v. THE STATE.
S16A1521.  NIXON v. THE STATE.


HUNSTEIN, Justice.

Appellants Julius Thomas and Desmond Nixon were tried jointly and

convicted of murder and related offenses in connection with a crime spree that

took place over three days in January 2013.[1] Both men now appeal, arguing that

---

[1] On October 16, 2013, a Clayton County grand jury indicted Julius Thomas, Desmond Nixon and Ishmael Carter on a twenty-one count indictment involving three separate victims.  Thomas, Nixon and Carter were jointly indicted regarding the crimes committed against victim B. W. as follows: rape (Count 1), aggravated assault (Counts 2, 3 and 5), armed robbery (Count 4), and possession of a firearm during the commission of a crime (Counts 6, 7 and 8).  Thomas and Nixon were jointly indicted for their crimes against the other two victims, Marcelino Rodriguez and Rosendo Bandera, as follows: armed robbery (Count 9 – Rodriguez), aggravated assault (Counts 10, 11 – Rodriguez), misdemeanor battery (Count 12 – Rodriguez), malice murder (Count 15 – Bandera), felony murder predicated on possession of a firearm by a convicted felon (Count 16 – Bandera), felony murder predicated on aggravated assault (Count 18 – Bandera), aggravated assault (Counts 19, 20 – Bandera) and possession of a firearm during the commission of a crime (Counts 13, 14 and 21). Finally, Nixon was indicted for possession of a firearm by a convicted felon (Count 17).

The three co-defendants were tried together in a jury trial from November 10 through 21, 2014.  Nixon was convicted on all charges; the trial court sentenced him to life without parole for the malice murder conviction (Count 15) and imposed three additional concurrent life sentences for the rape and armed robbery of B. W. (Counts 1 and 4) and the armed robbery of Rodriguez (Count 9).  Regarding the weapons charges listed in Counts 6, 7, 8, 13, 14 and 21, the trial court sentenced Nixon to five

the evidence was insufficient to support their convictions and averring claims of ineffective assistance of counsel. Though we find no merit to the ineffective assistance claims raised by both Appellants, we do find error with regard to Nixon's sentences for three counts of possession of a firearm during the commission of a felony. See Hulett v. State, 296 Ga. 49, 54 (2) (766 SE2d 1) (2014) (merger error, even if not raised by the parties, may be addressed by appellate court sua sponte). Therefore, we must vacate those aspects of Nixon's sentences. Further, though the evidence is sufficient to support all of Nixon's criminal convictions and sentences, as well as Thomas' convictions and

years on each count to run concurrent to one another but consecutive to the rape conviction. As discussed in Division 3, the trial court erred when it sentenced Nixon for the weapons charges in Counts 6, 8 and 14. The trial court also sentenced Nixon to 12 months concurrent on the battery conviction (Count 12), making for a total sentence of life without the possibility of parole plus five years. The trial court properly merged and/or vacated the remaining charges for sentencing purposes.

The jury found Thomas guilty of: two aggravated assaults against B. W. (Counts 3 and 5); the armed robbery of B. W. (Count 4); the felony murder predicated on aggravated assault of Bandera (Count 18); and, two aggravated assaults against Bandera (Counts 19 and 20). The State entered an order of nolle prosequi as to Count 16 as it applied to Thomas, and the jury acquitted him of the remaining charges. Thomas was sentenced to life for the felony murder and 20 years concurrent for the armed robbery. All other counts were properly merged by the trial court.

Each Appellant timely filed a motion for new trial, and respectively amended his motion. Following hearings on February 2, 2016, the trial court denied both amended motions. Each Appellant timely filed a notice of appeal; these appeals were docketed to the September 2016 term of this Court and were thereafter submitted for decision on the briefs.

2

sentences as they relate to Bandera, we reverse Thomas' conviction and sentence for the armed robbery and set aside his guilty verdicts for the aggravated assaults of B. W. based upon insufficient evidence proving he was a party to these crimes.

*Sufficiency of the Evidence*

1.    Both Thomas and Nixon argue that the evidence presented at their joint trial was insufficient to support their convictions. Viewed in the light most favorable to the jury's verdict, the evidence adduced at trial established that Julius Thomas, Desmond "Philly" Nixon and Ishmael "Smurf" Carter were close friends and members of a rap group known as B.G.M. Witnesses recalled that Thomas and Nixon were so close that they would periodically live in the same house and answer incoming calls on the other's cell phone. In January 2013, B. W., Marcelino Rodriguez and Rosendo Bandera were victimized as follows:

B. W. Rape and Armed Robbery

On January 7, 2013, B.W., who was working at a China Express in Clayton County, Georgia, was delivering her last order of the night to 293 Roxbury Drive, which is located approximately one block from Thomas' then-residence. Upon B. W.'s arrival at the house, a man she later identified as Carter

3

was standing outside near the driveway. Carter approached and asked to sit inside the vehicle until his friend brought out money to pay for the order. B. W. allowed him to sit in the front passenger's seat and, despite having flirted with her on the phone earlier in the evening when he was placing the delivery order, Carter was now quiet and texting on a phone.

Eventually, another man came outside and spoke with Carter about paying for the meal, leaving the front passenger door open. The men returned to the driver's side door where B. W. was still seated. Shortly thereafter, she felt a gun against her right side. She turned and faced a third man, later identified as Nixon, who demanded money from her. B. W. said she did not have any money, at which point Nixon took her cell phone and told her to remove her clothes. She complied. Nixon proceeded to rape her in the front seat of the car at gunpoint while the other two men blocked the driver's side door. The group left B. W. in the car and headed back into the house, claiming that they were going to prepare the house to kill B. W., but the men never returned.

B. W. later identified Nixon and Carter from photographic lineups as two of the men involved in her assault, but she was unable to identify Thomas as the third man. Phone records introduced at trial showed that Thomas' cell phone

was used to place the delivery order with China Express the night of the crimes. Law enforcement also located Nixon's fingerprints in the car where B. W. was raped. Finally, after B. W. replaced her cell phone and re-activated her old phone number, she began receiving phone calls for "Philly" and "Smurf." In fact, Nixon's girlfriend testified at trial that, after the night B. W. was raped, she would reach Nixon by calling the phone number belonging to B. W.'s stolen cell phone.

Marcelino Rodriguez Armed Robbery

On January 22, 2013, around 11:00 p.m., Marcelino Rodriguez was walking on Old Dixie Highway in Clayton County, Georgia, when a man walked up to him, held a gun to Rodriguez's forehead, and demanded money. Rodriguez handed over his wallet and cell phone. He then saw a second person get out of a green Ford Escort. Rodriguez removed his jacket and threw it at the armed man in an attempt to distract him, but the man moved out of the way and hit Rodriguez over the head with the gun, causing a half-inch laceration to the base of Rodriguez's skull. Rodriguez later identified Nixon in a photographic lineup as the man who pulled the gun on him, but he could not identify the driver of the Ford Escort.

Bandera Murder

On January 24, 2013, Rosendo Bandera was working as a taxi cab driver in Clayton County, Georgia. Bandera's last customer testified at trial that, as he dropped her off in Morrow around 9:45 p.m., he mentioned he had two other fares waiting to be picked up. Cell phone records show that calls from both Thomas' cell phone and Rodriguez's stolen cell phone were placed to Bandera on the night of the murder; Bandera's driver's log also included entries with Thomas' cell phone number. Further, text messages between Thomas' and Rodriguez's phones showed two people discussing the robbery of the taxi driver. At trial, Thomas' girlfriend confirmed that he sent her text messages from Rodriguez's cell phone throughout the day of Bandera's murder.

Around 10:00 p.m. on January 24, surveillance footage showed Bandera picking a customer up from a CVS parking lot. The CVS was very close to Thomas' house where he and Nixon were seen together earlier in the evening. Cell tower records show that the cell phone activity from Thomas' phone and Rodriguez's stolen phone occurred near this CVS. At 10:25 p.m., Bandera was found dead of a gunshot wound to the head in his taxi cab, which was located in a neighborhood a couple miles from the CVS. After the murder, Nixon

6

warned Thomas' girlfriend not to call him "Philly" anymore; Thomas fled the state after telling his girlfriend that he needed to leave Georgia.

Later in the investigation, officers were informed by two different jail inmates (Brandon Jones and Bryant Douglas) that Nixon had bragged to them about his role in the crime spree. At trial, both Jones and Douglas testified to the numerous inculpatory statements made by Nixon in their presence.

Nixon argues that the evidence relied upon by the State was insufficient to support his convictions and sentences. Namely, Nixon alleges that the testimony of the jailhouse informants was unreliable and wholly circumstantial and that, without their testimony, the remainder of the State's evidence fails to prove his guilt beyond a reasonable doubt. We disagree.

When evaluating the sufficiency of evidence, the proper standard for review is whether a rational trier of fact could have found the defendant guilty beyond a reasonable doubt. See Jackson v. Virginia, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979). "This Court does not reweigh evidence or resolve conflicts in testimony; instead, evidence is reviewed in a light most favorable to the verdict, with deference to the jury's assessment of the weight and credibility of the evidence." Hayes v. State, 292 Ga. 506, 506 (739 SE2d 313)

7

(2013). The issues raised by Nixon go to the weight of the evidence against him, which is a question for the jury to decide, not this Court. Id. Based on the foregoing, the evidence authorized the jury to find Nixon guilty beyond a reasonable doubt of the crimes for which he was convicted.

Thomas argues that the evidence is insufficient to support his guilty verdicts because no eyewitnesses identified him at any of the crimes, and because, he says, the remaining evidence was speculative, establishing only his mere presence. "While mere presence at the scene of a crime is not sufficient evidence to convict one of being a party to a crime, criminal intent may be inferred from presence, companionship, and conduct before, during and after the offense." Belsar v. State, 276 Ga. 261, 262 (1) (577 SE2d 569) (2003). See also OCGA § 16-2-20 (party to a crime statute); OCGA § 24-14-6 ("To warrant a conviction on circumstantial evidence, the proved facts shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis save that of the guilt of the accused.").

Viewed in the light most favorable to the jury's verdict, the evidence presented by the State was sufficient to sustain his conviction and sentence for felony murder and guilty verdicts for the aggravated assaults of Bandera.

8

Witnesses placed Thomas and Nixon together prior to the murder. Phone records and witness testimony established that Thomas possessed and used Rodriguez's stolen cell phone on the day of the murder. Moreover, text messages between Thomas' and Rodriguez's phones showed two people discussing the potential robbery of the taxi driver. Finally, after telling his girlfriend he had to leave Georgia, Thomas fled to Rhode Island where he was later arrested for his participation in these crimes. Accordingly, the jury was authorized to find Thomas guilty of the felony murder and aggravated assaults of Bandera.

However, we find that the evidence was insufficient to support Thomas' guilty verdicts for the armed robbery and aggravated assaults of B. W. Here, although Thomas' phone was used to place the delivery order, the evidence at trial showed that Carter and Nixon would routinely use Thomas' cell phone. In fact, the evidence at trial showed that Carter placed the delivery order and had Thomas' phone when B. W. arrived at the abandoned residence. Further, although B. W. provided a general description of her third attacker (tall, light-skinned, African-American man with low cut curly hair), she did not identify Thomas either during the investigation or at trial. With no other evidence

9

linking Thomas to B. W.'s assault, the State's evidence of his presence, much less his participation as a party to the crimes, is tenuous at best. Consequently, the evidence was insufficient to establish Thomas' guilt beyond a reasonable doubt regarding the armed robbery and aggravated assaults of B. W., his conviction and sentence for the armed robbery must be reversed and his guilty verdict for the aggravated assaults must be set aside.

*Ineffective Assistance of Counsel*

2.    Both Appellants also contend that they received ineffective assistance of trial counsel. Though Appellants raise different claims of ineffective assistance, the Strickland[2] standard of establishing both deficient performance and prejudice applies. "In reviewing the trial court's decision, '[w]e accept the trial court's factual findings and credibility determinations unless clearly erroneous, but we independently apply the legal principles to the facts.'" (Citation and punctuation omitted.) Wright v. State, 291 Ga. 869, 870 (2) (734 SE2d 876) (2012). With these principles in mind, we address Appellants' claims.

(a)    *Thomas' claims of ineffective assistance*

---

[2] Strickland v. Washington, 466 U. S. 668 (104 SCt 2052, 80 LE2d 674) (1984).

Thomas alleges that his trial counsel was ineffective by failing to: (1) request his trial be severed from his co-defendants; (2) adequately inform him regarding his right to testify at trial; and (3) object, move to strike, or request a mistrial regarding portions of the testimony of State's witness Brandon Jones which, he alleges, violated his right to confront the witnesses against him pursuant to Bruton v. United States, 391 U. S. 123 (88 SCt 1620, 20 LE2d 476) (1968). Because Thomas has failed to meet his burden under Strickland, we affirm his convictions and sentences relating to the Bandera murder.

(1)    *Request for severance*

First, Thomas claims that his trial counsel was ineffective for failing to file a motion to sever his trial from that of his co-defendants. To prove deficient performance, one must show that his attorney "performed at trial in an objectively unreasonable way considering all the circumstances and in the light of prevailing professional norms." Romer v. State, 293 Ga. 339, 344 (3) (745 SE2d 637) (2013). "The failure to file a motion to sever does not require a finding of ineffective assistance where the decision whether to seek severance is a matter of trial tactics or strategy, and a decision amounting to reasonable trial strategy does not constitute deficient performance." (Citations and

11

punctuation omitted.) <u>Jackson v. State</u>, 281 Ga. 705, 707 (6) (642 SE2d 656) (2007).

Here, trial counsel testified at the motion for new trial hearing that he made a strategic decision not to file a motion to sever. Counsel was concerned about the numerous prior statements made by both Nixon and Carter in which they had implicated Thomas; however, counsel knew that, because of the restrictions of <u>Bruton</u>, it would be harder for the State to admit these statements at a joint trial. Therefore, in an effort to make the co-defendants' statements less likely to come into evidence against Thomas at trial, counsel elected not to file a motion to sever. Indeed, the record shows that trial counsel's strategic decision proved fruitful as the State agreed to limit its questioning of certain witnesses and provided cautionary instructions to the same so as to not elicit these inculpatory co-defendant statements at trial. Accordingly, the record supports the trial court's finding that this was a reasonable strategic decision. This claim is without merit.

(2) *The right to testify*

Thomas also claims his trial counsel was ineffective because he failed to adequately instruct Thomas on his right to testify and further alleges that, when

he asked counsel regarding his rights, counsel engaged in fear tactics in order to prevent Thomas from taking the stand. Although the trial court failed to make any specific factual findings regarding this claim of ineffectiveness, "remand is not mandated if we can determine from the record that the defendant cannot establish ineffective assistance of counsel under the two-prong test set forth in Strickland." (Punctuation omitted.) McClendon v. State, 299 Ga. 611, 613-614 (2) (791 SE2d 69) (2016).

At the motion for new trial hearing, trial counsel testified that he spoke with Thomas "every day" about "the good parts and the bad parts" of testifying. Counsel also informed Thomas that the decision concerning whether to testify was his to make. The motion for new trial court was entitled to believe counsel's testimony on this issue, see Warren v. State, 283 Ga. 42, 44 (6) (656 SE2d 803) (2008), and likely did as the court denied Thomas' amended motion. Moreover, the record shows that the trial court informed all three defendants of their right against self-incrimination, emphasizing that while their attorneys can provide advice as to whether they should take the stand or remain silent, the final decision concerning whether to testify was theirs alone. Thomas informed

13

the trial court that he understood his rights and that he elected not to testify. Accordingly, Thomas is not entitled to relief on this claim.

(3) *Testimony of Brandon Jones*

Thomas also claims that trial counsel was ineffective for failing to object, move to strike, or request a mistrial regarding the testimony of jailhouse informant Brandon Jones. According to Thomas, Jones' testimony — which referenced Nixon's own inculpatory statements about crimes for which only Thomas and Nixon were indicted — coupled with Jones' use of the pronoun "they" when describing Nixon's statements effectively implicated Thomas as a party to a crime, and, therefore violated his right to cross-examination under Bruton. We disagree.

"Bruton excludes only the statement of a nontestifying co-defendant that standing alone directly inculpates the defendant." (Citation omitted.) McLean v. State, 291 Ga. 873, 875 (3) (738 SE2d 267) (2012).[3] Here, informant Jones was instructed to limit his testimony to Nixon's admissions regarding his own actions in the crime spree. Jones told the jury about his conversations with

---

[3] We also note that Bruton "does not apply to *non-testimonial* out-of-court statements made by such a [non-testifying] co-defendant." (Emphasis in original.) Billings v. State, 293 Ga. 99, 103-104 (4) (745 SE2d 583) (2013).

Nixon wherein Nixon admitted his involvement in the crimes charged. Though Jones used the pronoun "they" on a few occasions during his testimony, "they" were never identified by Jones. Nor did Jones identify Thomas as a participant in any of the crimes, instead focusing on Nixon's own inculpatory admissions. See id. at 875-876 (3) (holding that the defendant's confrontation rights were not violated at a joint trial where evidence introduced that a non-testifying co-defendant made a statement after the shooting that "they" had thrown a gun out of the car because the statement did not directly implicate the defendant); Nelms v. State, 285 Ga. 718, 720 (2) (b) (681 SE2d 141) (2009) (the admission of a non-testifying co-defendant's statement that "they" went almost to Louisiana did not violate Bruton because that statement did not directly implicate the defendant). Standing alone, the testimony falls outside of Bruton as Jones did not directly implicate Thomas and, at most, his use of "they" "became incriminating only when linked with other evidence introduced at trial." Burns v. State, 280 Ga. 24, 27 (3) (622 SE2d 352) (2005).

Therefore, any objection made by counsel to Jones' use of the pronoun "they" would have been meritless as the testimony did not directly implicate

Thomas in violation of <u>Bruton</u>. Consequently, this claim of ineffective assistance is also without merit.

(b) *Nixon's claim of ineffective assistance*

Nixon alleges that his trial counsel was ineffective for failing to call him as a witness to rebut the testimony of jailhouse informants Brandon Jones and Bryant Douglas. Specifically, Nixon alleges that, after Jones and Douglas testified, he informed counsel that both informants had lied under oath and requested to be called as a witness, but counsel refused. However, a review of the record belies Nixon's claim.

At the motion for new trial hearing, Nixon's attorney testified that, prior to trial, he spoke with Nixon about his right to testify and informed Nixon that the final decision on whether to testify was his to make. As discussed in Division 2 (a) (2), supra, the record shows that the trial court informed Nixon and his co-defendants of their right against self-incrimination. Indeed, this colloquy occurred after both jailhouse informants testified, and after the State rested its case. Trial counsel confirmed at the motion for new trial hearing that he spoke with Nixon about his right to testify again at this time. Then, prior to the defense resting, the record shows that all three defendants were again

16

reminded of their right against self-incrimination. After stating that he understood his rights, Nixon elected not to testify. Based on the foregoing, the motion for new trial court did not err in denying this claim as Nixon has failed to establish either prong of the Strickland test. Accordingly, this ineffectiveness claim is without merit.

*Sentencing of Nixon*

3. While the evidence was sufficient to sustain Nixon's convictions, we do find error in his sentences. As discussed in footnote 1, supra, Nixon was indicted for numerous felony counts including six separate counts of possession of a firearm during the commission of a felony for possessing a firearm during the rape, armed robbery and aggravated assault of B. W. (Counts 6, 7 and 8), the armed robbery and aggravated assault of Rodriguez (Counts 13 and 14) and the aggravated assault of Bandera (Count 21). The trial court sentenced Nixon to life without parole for the malice murder conviction with three concurrent life sentences for the rape and armed robbery of B. W. and the armed robbery of Rodriguez. The trial court also sentenced Nixon to five years each on all six weapons charges to run concurrent to one another, but consecutive to the rape conviction. Though the trial court properly sentenced Nixon for the weapons

17

charges associated with Bandera's aggravated assault, B. W.'s rape, and Rodriguez's armed robbery, the court erred when it sentenced Nixon for possession of a firearm during the armed robbery and aggravated assault of B. W. (Counts 6 and 8) and the aggravated assault of Rodriguez (Count 14). Therefore, the sentences for these three counts must be vacated.

It is well settled that

> [w]here multiple crimes are committed together during the course of one continuous crime spree, a defendant may be convicted once for possession of a firearm during the commission of a crime as to every individual victim of the crime spree, as provided under OCGA § 16-11-106 (b) (1), and additionally once for firearm possession for every crime enumerated in subsections (b) (2) through (5).

Smith v. State, 297 Ga. 268, 269 (1) (b) (773 SE2d 269) (2015) (citing State v. Marlowe, 277 Ga. 383, 386 (2) (c) (589 SE2d 69) (2003)). See also Gibbs v. State, 295 Ga. 92, 96 (2) (757 SE2d 842) (2014). The rape, armed robbery and aggravated assault of B. W. were all carried out against the same victim, using the same handgun during one continuous criminal encounter. Therefore, the trial court properly sentenced Nixon on the possession charge predicated on B. W.'s rape as that crime was committed against the person of another, see OCGA § 16-11-106 (b) (1), but erred in sentencing Nixon on the weapons charges

18

predicated upon the armed robbery and aggravated assault of B. W. (Counts 6 and 8) as they do not meet any of the remaining categories in OCGA § 16-11-106 (b) (2)-(5). Consequently, Nixon's sentences on these two counts must be vacated. Likewise, the sentence for possession of a firearm predicated on the aggravated assault of Rodriguez (Count 14) must also be vacated.

Judgment affirmed in part and reversed in part in Case No. S16A1520. Judgment affirmed in part and vacated in part in Case No. S16A1521. All the Justices concur.

Decided January 23, 2017.

Murder. Clayton Superior Court. Before Judge Simmons.

Johnson & Associates, Theodore Johnson, for appellant (case no. S16A1520).

Dell Jackson, for appellant (case no. S16A1521).

Tracy Graham Lawson, District Attorney, Elizabeth A. Baker, Kathryn L. Powers, Assistant District Attorneys; Sanuel S. Olens, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Matthew B. Crowder, Matthew M. Youn, Assistant Attorneys General, for appellee.