302 Ga. 173
FINAL COPY


S17A0993. BLACKMON v. THE STATE.


NAHMIAS, Justice.

Appellant Isaiah Blackmon challenges his convictions for felony murder and other crimes in connection with the shooting death of Edward Cobb and the aggravated assault of Stanton Gilliam. Appellant contends that the evidence was legally insufficient to support his convictions and that he was denied the effective assistance of counsel. We affirm.[1]

1. (a) Viewed in the light most favorable to the verdicts, the evidence at trial showed the following. On December 6, 2011, Briana Abner

---

[1] The crimes occurred on December 6, 2011. On March 15, 2012, a DeKalb County grand jury indicted Appellant, along with Dejuan Spratlin, for malice murder, felony murder, two counts of aggravated assault with a deadly weapon, and possession of a firearm during the commission of a crime. At a joint trial from October 28 to November 1, 2013, the jury acquitted Appellant of malice murder but found him guilty of the remaining charges. (Spratlin was found guilty of all charges except the aggravated assault of Gilliam.) The trial court sentenced Appellant to serve life in prison for felony murder, 20 years consecutive for aggravated assault against Gilliam, and five years consecutive for the firearm conviction; the other aggravated assault verdict merged into the felony murder. Appellant filed a timely motion for new trial, which he amended with new counsel on April 15, 2016. After an evidentiary hearing, the trial court denied the motion on May 25, 2016. Appellant filed a timely notice of appeal, which he twice amended. The case was docketed in this Court for the April 2017 term and submitted for decision on the briefs.

called Appellant and asked him to get her a small quantity of marijuana. Later that day, Appellant called Abner back and told her to pick up co-defendant Dejuan Spratlin, who had no car, because Spratlin "knew the weed man." Spratlin called Gilliam, whom he knew from high school, and arranged to buy a pound of marijuana. Abner drove Spratlin to Gilliam's house and waited in the car while the two men negotiated over the price inside. At some point, Spratlin called Appellant, and Appellant drove to Gilliam's house. Gilliam felt uncomfortable once Appellant arrived, because he was expecting to be "dealing with one person, not two people." Gilliam called his neighbor Edward Cobb to come over, and after Cobb arrived, an agreement was reached. Appellant then gave Gilliam $1,025 in cash in return for the marijuana.

Appellant walked toward the door with Cobb and Gilliam, but as Cobb started to open the door, Appellant pulled out a gun and said, "F**k this s**t, you know what it is, go ahead and give me everything." Gilliam threw the money onto a pool table near Spratlin as Cobb began struggling with Appellant for the gun. Gilliam tried to help Cobb at first, but after Appellant shot Gilliam twice in the leg, he ran to a bedroom and hid in the closet. Gilliam heard several

2

more shots before Appellant and Spratlin left, taking with them the money from the pool table as well as the marijuana.

Gilliam's two housemates, Karalo Jackson and Rikeshia Andrews, were awakened by the gunfire. Andrews armed himself with an iron, because there were no guns in the house. Jackson found Cobb, who had been shot four times, lying on the living room floor and called 911. Gilliam eventually recovered from his injuries, but Cobb died from gunshot wounds to his torso. Three bullets were taken from Cobb's body — two fired from a .38 caliber gun and one fired from a .40 caliber gun. Several other bullets, both .38 caliber and .40 caliber, were found at the scene, along with eight .40 caliber shell casings. A firearms expert determined that at least two and possibly three guns were involved in the shooting. Gilliam identified Spratlin, and ultimately Appellant, to the police and at trial.

Police officers later located Appellant and Spratlin together at a motel in Alabama. Both men ran from the police but were eventually apprehended. A few days after the shooting, a cell phone associated with Appellant had received text messages about the sale of two guns, including a .40 caliber gun. While in jail, Appellant spoke to his mother and told her that he "gave the gun to

3

someone to get rid of." Neither Appellant nor Spratlin testified at trial. Abner testified that when Spratlin ran out to her car after the shooting, he said, "They're trying to rob me." Gilliam testified that he had not tried to rob anyone. The court charged the jury on self-defense, but the jury rejected that defense.

(b) Appellant contends that the evidence was insufficient to support his convictions. When properly viewed in the light most favorable to the verdicts, however, the evidence presented at trial and summarized above was sufficient to authorize a rational jury to reject Appellant's justification defense and find him guilty beyond a reasonable doubt of the crimes for which he was convicted. See Jackson v. Virginia, 443 U. S. 307, 319 (99 SCt 2781, 61 LE2d 560) (1979). See also Anthony v. State, 298 Ga. 827, 829 (785 SE2d 277) (2016) ( "The jury is free to reject any evidence in support of a justification defense and to accept the evidence that the shooting was not done in self-defense."); Vega v. State, 285 Ga. 32, 33 (673 SE2d 223) (2009) ("'It was for the jury to determine the credibility of the witnesses and to resolve any conflicts or inconsistencies in the evidence.'" (citation omitted)).

2. Appellant claims that his trial counsel provided ineffective assistance in several ways. To succeed on this claim, Appellant must prove both

4

that his attorney's performance was professionally deficient and that the deficiency resulted in prejudice to his case. See Strickland v. Washington, 466 U. S. 668, 687 (104 SCt 2052, 80 LE2d 674) (1984). To establish deficient performance, Appellant must show that his counsel's acts or omissions were objectively unreasonable, considering all the circumstances at the time and in the light of prevailing professional norms. See id. at 687-690. To establish prejudice, Appellant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. "This burden, though not impossible to carry, is a heavy one." Arnold v. State, 292 Ga. 268, 269 (737 SE2d 98) (2013). Appellant has not carried his burden in this case.

Appellant points first to his trial counsel's alleged failure to consult adequately with him before trial. However, "there exists no magic amount of time which counsel must spend in actual conference with his client," and Appellant "does not specifically describe how additional communications with his lawyer" would have enhanced his defense. Henry v. State, 279 Ga. 615, 616 (619 SE2d 609) (2005) (citations and punctuation omitted). Thus, Appellant has not sufficiently alleged, much less met his burden to show, deficient

5

performance by his trial counsel in this regard. See Strickland, 466 U. S. at 690 (requiring defendants to "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment").

Appellant points next to his trial counsel's failure to file a written request for a self-defense instruction, given that this was his sole defense. But trial counsel orally requested a self-defense instruction and the trial court ultimately gave that instruction to the jury. Thus, this claim is entirely meritless.

Finally, Appellant points to his counsel's failure to seek severance of his trial from that of his co-defendant. But trial counsel explained at the motion for new trial hearing that he made a strategic decision to present a unified defense of justification with Spratlin, in part to ensure that the State would not be able to introduce a statement by Spratlin that was harmful to Appellant. Appellant has not demonstrated that this strategic decision was unreasonable under the circumstances. See Thomas v. State, 300 Ga. 433, 438 (796 SE2d 242) (2017) (rejecting a claim of deficient performance for not filing a motion to sever where defense counsel testified that his strategy was to make the co-defendants' statements harder to admit due to the restrictions of Bruton v. United States, 391 U. S. 123 (88 SCt 1620, 20 LE2d 476) (1968), and that strategy was not shown

to be unreasonable). Appellant therefore has not shown deficient performance. Nor has he shown that a severance motion would have been granted if requested — the trial court indicated it would not have been — or that separate trials would in reasonable probability have resulted in a more favorable outcome for him. We note in this respect that Appellant was acquitted of malice murder, while Spratlin was convicted of that charge.

For these reasons, Appellant has not shown that he received ineffective assistance from his trial counsel.

Judgment affirmed. All the Justices concur.

Decided October 2, 2017.

Murder. DeKalb Superior Court. Before Judge Coursey.

Genevieve Holmes, for appellant.

Sherry Boston, District Attorney, Lenny I. Krick, Otobong U. Ekpo, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Ashleigh D. Headrick, Assistant Attorney General, for appellee.