303 Ga. 110
FINAL COPY

S17A1641.  DENT v. THE STATE.

HINES, Chief Justice.

Terrance Justin Dent appeals his convictions and sentences for felony murder while in the commission of aggravated assault and possession of a firearm during the commission of a felony, as well as the denial of his motion for new trial, as amended, all in connection with the shooting death of Jevon Freeman.  Dent challenges the sufficiency and weight of the evidence, the failure to charge the jury on voluntary manslaughter in accordance with *Edge v. State*, 261 Ga. 865 (414 SE2d 463) (1992), and the effectiveness of his trial counsel.  Finding the challenges to be without merit, we affirm.[1]

---

[1] The crimes occurred on November 6, 2013.  On July 30, 2014, a Clayton County grand jury returned an indictment against Dent charging him with 14 offenses: Count 1 — the malice murder of Freeman; Count 2 — the aggravated assault of Freeman by placing him in reasonable apprehension of immediately receiving a violent injury by the firing of a deadly weapon; Count 3 — the felony murder of Freeman while in the commission of aggravated assault as alleged in Count 2; Count 4 — the aggravated assault of Freeman by shooting him with a handgun; Count 5 — the felony murder of Freeman while in the commission of aggravated assault as alleged in Count 4; Count 6 — the aggravated battery of Freeman; Count 7 — the felony murder of Freeman while in the commission of aggravated battery as alleged in Count 6; Count 8 — possession of a firearm

The evidence construed in favor of the verdicts showed the following. Around 4:30 p.m. or 5:00 p.m. on November 6, 2013, Freeman went to meet potential buyer Dent, who had responded to Freeman's Craigslist ad to sell an iPhone. Freeman had listed the selling price as $500 but Dent was offering to pay $450. In arranging the sale, Freeman requested that the meeting be in a public place, namely a gas station on Riverdale Road; however, Dent was adamant about meeting at a church at the intersection of I-85 and Garden Walk Boulevard. Freeman agreed to meet there even though he voiced to his best friend that he was worried about being robbed as the church would be empty at that time and it would be dark outside.

---

during the commission of malice murder as alleged in Count 1; Count 9 — possession of a firearm during the commission of aggravated assault as alleged in Count 2; Count 10 — possession of a firearm during the commission of felony murder as alleged in Count 3; Count 11 — possession of a firearm during the commission of aggravated assault as alleged in Count 4; Count 12 — possession of a firearm during the commission of felony murder as alleged in Count 5; Count 13 — possession of a firearm during the commission of aggravated battery as alleged in Count 6; and Count 14 — possession of a firearm during the commission of felony murder as alleged in Count 7. Initially, Dent was tried before a jury beginning on February 9, 2015, but the trial ended in a mistrial on February 13, 2015, because of found improper jury conduct. Dent was retried before a jury August 24-28, 2015, and acquitted of Counts 1, 8, 12, and 14, but found guilty of the remaining charges. On August 28, 2015, he was sentenced to life in prison on Count 3, and a consecutive five years in prison on Count 10, "suspended upon no new violation of the law." The trial court ruled that the remaining guilty verdicts merged for the purpose of sentencing, and the ruling has not been challenged. See *Dixon v. State*, 302 Ga. ___ (805 SE2d 859) (2017). A motion for new trial was filed on September 10, 2015, and amended on July 28, 2016, and on August 4, 2016. The motion for new trial, as amended, was denied on February 9, 2017. A notice of appeal was filed on February 13, 2017, and the case was docketed to the August 2017 term of this Court. The appeal was submitted for decision on the briefs.

2

When Dent and Freeman met in the church parking lot, they went to the door of the daycare facility at the church and requested entry to complete the sale of the iPhone. An employee at the daycare facility declined to let them enter. Minutes later, the employee heard gunshots and called the police.

When officers responded to the scene at 6:18 p.m., they found Freeman shot and unresponsive, slumped over in his car. Officers found approximately $450 in cash scattered on the ground and a Samsung cell phone belonging to Freeman outside the driver's door on the ground. Dent was no longer on the scene. Freeman was later pronounced dead at the hospital.

Freeman's phone records revealed that in the minutes prior to his death, Freeman communicated with a cell phone number belonging to Dent. The cell phone number was known to be Dent's because he had used it a year earlier to place a 911 call. That time, Dent had posted an ad on Craigslist for the sale of an iPad. Allegedly, when Dent and the buyer met for the sale, the buyer took the iPad and left without paying; when Dent asked for his money, the buyer threatened to fight him. Dent reported this alleged incident and his address was listed on that incident report. Accordingly, officers obtained and executed a search warrant for Dent's residence.

During the search, investigators located two Samsung cell phones in Dent's bedroom. Search warrants were obtained for electronic data and messages on those cell phones. The phone messages revealed plans by Dent to purchase a .22 caliber pistol on November 1, 2013, the same type of gun used to kill Freeman. Internet searches conducted by Dent in the days leading up to the crimes were also located on the phones, including searches about purchasing and using firearms, such as "can a 22 caliber kill," "getting shot with gun," "how to kill someone," "how to rob someone with a gun," "how to scare people with a gun," and "how to shoot and kill somebody." It also revealed searches done only hours after the murder: "guy shot in Riverdale, Georgia," "what do police do when they test for fingerprint," "what if the police found my fingerprint," and "do the police have everyone's fingerprints."

On November 8, 2013, two days after the murder, Dent was arrested and interviewed. After waiving his *Miranda*[2] rights, Dent related three different accounts about the incident. Dent first stated, contrary to text messages between him and Freeman, that their meeting initially was to be at the church. He also stated that he drew his gun, reached backward, and shot at Freeman one time

[2] See *Miranda v. Arizona*, 384 U. S. 436 (86 SCt 1602, 16 LE2d 694) (1966).

4

after Freeman placed him in a chokehold and he became frightened for his life.

Dent's version of events, especially his supposed position when firing his weapon, did not make sense to the police, so they challenged his story. Dent's next story did not include an alleged chokehold or any touching; he said that he turned and shot Freeman because Freeman was acting "weird and suspicious" during the sale. He ran from the car, turned to see Freeman chasing him, and shot again. Dent's third and final version of events was that he already had the gun in his hand during the transaction, and that he shot Freeman when he felt Freeman was acting "weird" while counting the money. Dent said that he fired a second shot when he saw Freeman try to get back up and walk toward him. Dent never claimed that Freeman brandished a weapon or was armed in any manner, and in his second and third accounts, Dent admitted that Freeman did not threaten him with physical harm.

During the interview, Dent also provided the location of the ammunition, pistol, and iPhone. The iPhone was located inside Dent's school locker, and the pistol was found in the possession of his friend, Latrel Avante Irving.[3] Dent had

---

[3] In the same indictment as Dent, Irving was charged with possession of a handgun within a school safety zone (Count 15) and possession of a pistol or revolver by a person under eighteen (Count 16). Irving testified as a witness for the State at Dent's trial, and he was offered a plea to a

given Irving the gun at school two days after the shooting. Irving testified that Dent told him at school the day after the murder that when Freeman was counting the money, Freeman "kept looking back at him like he was going to do something." Irving further testified that Dent told him that when Dent was running away, Freeman chased him, so he turned around and shot at Freeman twice. Dent did not mention that there was any kind of struggle.

The medical examiner testified that Freeman was killed by a gunshot wound to the chest, which pierced the heart and rendered it unable to pump blood. There was no sign of soot or stippling, and the bullet was fired from an indeterminate range. The bullet recovered from Freeman's body was a .22 caliber bullet fired by the derringer pistol purchased by Dent.

1. Dent contends that the evidence presented by the State was insufficient as a matter of law to support his conviction for felony murder. He maintains that the State's case rested primarily on the erroneous theory that he intended to rob Freeman, even though the evidence did not support it, and that the evidence, which was circumstantial, did not exclude the reasonable hypothesis that he shot Freeman in self-defense.

misdemeanor charge in exchange for his testimony.

When evaluating the sufficiency of the evidence:

> Evidence may be less than overwhelming, but still sufficient to sustain a conviction. When we consider the legal sufficiency of the evidence, we must put aside any questions about conflicting evidence, the credibility of witnesses, or the weight of the evidence, leaving the resolution of such things to the discretion of the trier of fact. Instead, we must view the evidence in the light most favorable to the verdict, and we inquire only whether any rational trier of fact might find beyond a reasonable doubt from that evidence that the defendant is guilty of the crimes of which he was convicted.

*Walker v. State*, 296 Ga. 161, 163 (1) (766 SE2d 28) (2014) (citations and punctuation omitted). Furthermore, in order to establish the killing of another in self-defense, it must be shown that the circumstances would have excited the fears of a reasonable person that his safety was in danger. It is a jury question as to whether such a showing has been made, and therefore, whether a defendant's claim of self-defense should be accepted. *Howard v. State*, 298 Ga. 396, 398 (1) (782 SE2d 255) (2016). "A jury is free to reject a defendant's claim that he acted in self-defense." Id.

There was sufficient evidence from which a rational trier of fact could find that Dent's shooting of Freeman was not justified as self-defense and that he was guilty beyond a reasonable doubt of the crimes of which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

7

2. Dent also contends that the evidence was sufficiently close to warrant this Court to exercise discretion as the "13th juror" pursuant to the general grounds set forth in OCGA §§ 5-5-20[4] and 5-5-21[5] and grant him a new trial. However,

> [w]e are without authority to do so. A motion for new trial based on OCGA § 5-5-20, i.e., that the verdict is contrary to the evidence, addresses itself only to the discretion of the trial judge. Whether to grant a new trial based on OCGA § 5-5-21, i.e., that the verdict is strongly against the evidence, is one that is solely in the discretion of the trial court, and the appellate courts do not have the same discretion to order new trials.

*Smith v. State*, 292 Ga. 316, 317 (1) (b) (737 SE2d 677) (2013). Consequently, when an appellant asks this Court to review a trial court's denial of a new trial based upon the general grounds, "this Court must review the case under the standard set forth in *Jackson v. Virginia*, (supra), that is, if the evidence viewed in the light most favorable to the prosecution, supports the verdict or verdicts.

---

[4] OCGA § 5-5-20 provides:
> In any case when the verdict of a jury is found contrary to evidence and the principles of justice and equity, the judge presiding may grant a new trial before another jury.

[5] OCGA § 5-5-21 provides:
> The presiding judge may exercise a sound discretion in granting or refusing new trials in cases where the verdict may be decidedly and strongly against the weight of the evidence even though there may appear to be some slight evidence in favor of the finding.

(Cit.)" *Allen v. State*, 296 Ga. 738, 741-742 (2) (770 SE2d 625) (2015), quoting *Williams v. State*, 296 Ga. 573, 574 (769 SE2d 318) (2015). And, as this Court has determined in Division 1, supra, the standard set forth in *Jackson v. Virginia* has been met.

3. Dent next maintains that the trial court erred when it declined to instruct the jury on the lesser included offense of voluntary manslaughter after each count of felony murder, in violation of *Edge v. State*, supra. However, inasmuch as Dent did not make this objection at trial,[6] this Court's review is to determine whether the trial court's charge constituted "plain error," which may be found only when the subject jury instruction has an obvious defect which likely affected the outcome of the proceedings. OCGA § 17-8-58;[7] *Ortiz v. State*, 291

---

[6] The trial court, on request by Dent, agreed to give a voluntary manslaughter charge and did so following its instruction on malice murder. Neither party objected. The next day, the State argued that, under *Edge*, the modified merger rule applied to the felony murder charges, and requested that the judge instruct the jury pursuant to *Edge*. Dent joined in the prosecutor's request; however, the trial court declined to re-charge the jury, and neither party objected.

[7] OCGA § 17-8-58 provides:
  (a) Any party who objects to any portion of the charge to the jury or the failure to charge the jury shall inform the court of the specific objection and the grounds for such objection before the jury retires to deliberate. Such objections shall be done outside of the jury's hearing and presence.
  (b) Failure to object in accordance with subsection (a) of this Code section shall preclude appellate review of such portion of the jury charge, unless such portion of the jury charge constitutes plain error which affects substantial rights of the parties. Such plain error may be considered on appeal even if it was not brought to the court's attention as provided

Ga. 3, 4 (2) (727 SE2d 103) (2012).

> A trial court is required to give a requested charge on voluntary manslaughter if there is slight evidence showing that the victim seriously provoked the defendant, causing the defendant to kill the victim solely as the result of a sudden, violent, and irresistible passion, OCGA § 16-5-2 (a).[8]

*Francis v. State*, 296 Ga. 190, 193 (2) (766 SE2d 52) (2014), quoting *Merritt v. State*, 292 Ga. 327, 331 (2) (737 SE2d 673) (2013).

In *Edge*, this Court held that "[a] sequential charge requiring the jury to consider voluntary manslaughter *only* if it has considered and found the defendant not guilty of malice murder and felony murder is not appropriate where there is evidence that would authorize a charge on voluntary manslaughter," because if the jury concluded that a felony murder had occurred,

---

in subsection (a) of this Code section.

[8] OCGA § 16-5-2 (a) provides:

A person commits the offense of voluntary manslaughter when he causes the death of another human being under circumstances which would otherwise be murder and if he acts solely as the result of a sudden, violent, and irresistible passion resulting from serious provocation sufficient to excite such passion in a reasonable person; however, if there should have been an interval between the provocation and the killing sufficient for the voice of reason and humanity to be heard, of which the jury in all cases shall be the judge, the killing shall be attributed to deliberate revenge and be punished as murder.

"it would not then go on to consider evidence of provocation or passion which might authorize a verdict for voluntary manslaughter." 261 Ga. at 867 (2). Rather, the judge should instruct the jury "to ensure adequate consideration of charges for both forms of homicide." Id. However, an *Edge* violation only occurs when "there is evidence that would authorize a charge on voluntary manslaughter." Id. See also *Blake v. State*, 292 Ga. 516, 518 (2) (739 SE2d 319) (2013); *McGill v. State*, 263 Ga. 81, 83 (3) (428 SE2d 341) (1993).

Here, Dent testified he shot Freeman in self-defense. Even if Dent could have demonstrated that he acted in self-defense, "the provocation necessary to support a charge of voluntary manslaughter is markedly different from that which will support a self-defense claim." *Worthem v. State*, 270 Ga. 469, 471 (2) (509 SE2d 922) (1999). Voluntary manslaughter requires that the accused be "so influenced and excited that he reacted passionately rather than simply in an attempt to defend himself." Id. In this case, there is no evidence of a "sudden, violent, and irresistible passion resulting from serious provocation sufficient to excite such passion in a reasonable person." OCGA § 16-5-2 (a). With no evidence of sufficient provocation, the court was not required to charge the jury under *Edge*. There was no obvious *Edge* violation in this case. *Ortiz v. State,*

supra at 4 (2).

4. Lastly, Dent contends that his trial counsel provided ineffective assistance in various ways. In order to support the claim of ineffectiveness, he

> must prove both that his attorney's performance was professionally deficient and that the deficiency resulted in prejudice to his case. See *Strickland v. Washington*, 466 U. S. 668, 687 (104 SCt 2052, 80 LE2d 674) (1984). To establish deficient performance, Appellant must show that his counsel's acts or omissions were objectively unreasonable, considering all the circumstances at the time and in the light of prevailing professional norms. To establish prejudice, Appellant must show a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. This burden, though not impossible to carry, is a heavy one.

*Blackmon v. State*, 302 Ga. 173, 175 (2) (805 SE2d 899) (2017) (citations and punctuation omitted).

(a) Dent first maintains that trial counsel was ineffective for failing to file motions to suppress search warrants for the two recovered Samsung cell phones and the information obtained therefrom as well as statements made by Dent to the police, which Dent alleges were involuntary.

As to the cell phones and the recovered information, Dent urges that his counsel should have challenged the warrants because they erroneously stated the

12

date of the murder as November 6, 2014, rather than November 6, 2013,[9] and consequently, the searches pursuant to the warrants and the extracted data were excessive and illegal.[10]

To begin with, there is no allegation that the search warrants misidentified in any manner the cell phones to be searched. As for the incorrect date of the murder appearing in the affidavits supporting the warrants serving as a meritorious basis for suppression, certainly there is a statutory mechanism to suppress evidence illegally seized when a warrant is insufficient on its face. See OCGA § 17-5-30 (a) (2).[11] However, "[n]o search warrant shall be quashed or

---

[9] The incorrect date appears in the warrants' supporting affidavits.

[10] Only one of the warrants specifically named data ranging from October 1, 2014 to November 30, 2014. And, the supporting affidavits of both warrants contained the concluding statements that the searches were for data contained in the cell phones related to the alleged offender's activity "during the time frame both just prior to and immediately after the murder of Jevon Freeman."

[11] OCGA § 17-5-30 (a) (2) provides:
> (a) A defendant aggrieved by an unlawful search and seizure may move the court for the return of property, the possession of which is not otherwise unlawful, and to suppress as evidence anything so obtained on the grounds that:
> . . .
> (2) The search and seizure with a warrant was illegal because the warrant is insufficient on its face, there was not probable cause for the issuance of the warrant, or the warrant was illegally executed.

evidence suppressed because of a technical irregularity not affecting the substantial rights of the accused." OCGA § 17-5-31. Mere typographical or clerical errors do not ordinarily provide a basis to suppress evidence. See *Lester v. State*, 278 Ga. App. 247, 249 (1) (628 SE2d 674) (2006); *Carlton v. State*, 251 Ga. App. 339, 341 (1) (554 SE2d 318) (2001). Indeed, evidence obtained from the search warrants will not be suppressed when the technical irregularity does not affect the substantial rights of the accused and is "not so material as to destroy the integrity of the affidavit or the validity of the warrant." *Carson v. State*, 314 Ga. App. 515, 516 (1) (a) (724 SE2d 821) (2012) (citation and punctuation omitted). In fact, in *United States v. Cancela*, 812 F2d 1340 (11th Cir. 1987), an incorrect date regarding the crime in the warrant affidavit was determined not to invalidate the warrant. See also *Bowman v. State*, 205 Ga. App. 347 (422 SE2d 239) (1992) (factual statement in support of the search warrant listed an incorrect date of observing the illegal drugs to establish probable cause, yet the search and seizure pursuant to the warrant were deemed lawful).

However, even if the error in the warrants in this case were deemed not to be purely typographical or clerical, and the extracted data outside the

permissible scope of the warrants, Dent has not claimed, much less shown, any specific resulting prejudice for the purpose of establishing his claim of ineffective counsel. He has not alleged, other than in conclusory terms, that he was prejudiced by his attorney's failure to attempt to suppress the evidence obtained under the search warrants.[12] When the ineffective assistance of counsel claim is based on failure to file a motion, the defendant must "make a 'strong showing' that the evidence would have been suppressed had a motion to suppress been filed." *Roberts v. State*, 263 Ga. 807, 809 (2) (e) (439 SE2d 911) (1994), quoting *Ruffin v. State*, 201 Ga. App. 792, 793 (2) (a) (412 SE2d 850) (1991). Indeed, counsel's failure to make a motion which will not succeed cannot provide a basis for finding ineffective assistance of counsel. *Moss v. State*, 298 Ga. 613, 617 (5) (a) (783 SE2d 652) (2016). What is more, Dent's trial counsel testified at the motion-for-new-trial hearing that he did not object to the search warrants and the scope of the retrieved data in order to demonstrate to the jury broader aspects of Dent's search history that would be helpful to his

---

[12] In his brief, Dent summarily asserts that, "[b]ut for trial counsel's deficient performance in that he failed to file a motion to suppress the aforementioned search warrants, there is a probability that there would have been a different outcome."

15

defense.[13]

As to Dent's custodial statements and trial counsel's not filing a *Jackson-Denno*[14] motion seeking to suppress them, trial counsel was not constitutionally deficient if the statements were voluntary. *Speziali v. State*, 301 Ga. 290, 294 (2) (a) (800 SE2d 525) (2017). Dent was read his *Miranda* rights and signed a waiver of those rights before speaking to the police. And, he has failed to demonstrate that his statements were involuntary, and therefore, subject to exclusion had there been a *Jackson-Denno* hearing. Furthermore, at the motion-for-new-trial hearing, trial counsel testified that he wanted the video of the custodial interrogation admitted because, in his opinion, it assisted his client's defense. Thus, this was a strategic decision which has not been shown to be professionally unreasonable. See *Lowe v. State*, 259 Ga. App. 674, 676-677 (2) (578 SE2d 284) (2003).

(b) Dent next asserts that trial counsel failed to conduct a reasonable

---

[13] Counsel testified that he wanted to show that Dent did not "[get] up one morning and [start] searching how to kill people and what type of guns" but to show a range of topics any adolescent would search including "know how to shave" and "dance videos and that type of stuff."

[14] *Jackson v. Denno*, 378 U. S. 368 (84 SCt 1774, 12 LE2d 908) (1964).

investigation, specifically that trial counsel did not attempt to interview or locate alleged exculpatory witnesses.

Certainly, the failure of counsel to do an adequate investigation in a case, including not investigating potential witnesses, can amount to ineffective assistance of counsel. *Anthony v. State*, 302 Ga. 546, 553 (IV) (807 SE2d 891) (2017), citing *Zant v. Hamilton*, 251 Ga. 553 (307 SE2d 667) (1983). But, Dent has failed to demonstrate what the alleged witnesses would have provided and whether those witnesses would have testified favorably. Trial counsel testified he was never provided the names of these witnesses by Dent, and Dent testified that he could not then locate the witnesses. Further, Dent admitted that none of these witnesses were present at the shooting and that any evidence they could have provided would have been based solely on what he told them the day after the shooting. Without any assurance that trial counsel was aware of and failed to seek out witnesses who would have been found, and who would have been able to provide admissible evidence, there is no reasonable probability that there would have been a different result at trial. *Blackmon v. State*, supra at 176 (2).

(c) Dent next alleges that trial counsel was ineffective for failing to object

17

to, and for even eliciting, certain hearsay testimony related to the 911 call, statements from the employee at the church, and statements from detectives. However, trial counsel testified that he wanted the statements at issue to come into evidence for strategic purposes, including supporting Dent's alleged running from Freeman and that it was Dent who initiated the attempt to enter the church daycare facility, and consequently, that Dent was there for a legitimate transaction. And, there has been no showing of resulting prejudice to Dent or that trial counsel's tactical decision was unreasonable. See *Manner v. State*, 302 Ga. 877 (808 SE2d 681) (2017) (tactical or strategic decision can be basis of ineffective assistance claim only if patently unreasonable).

(d) Dent contends that his counsel was ineffective for failing to file a pre-trial motion for immunity from prosecution based on his claim of self-defense, inasmuch as it was his sole defense. See OCGA § 16-3-24.2.[15] However, trial

---

[15] OCGA § 16-3-24.2, effective July 1, 2014, provides:
    A person who uses threats or force in accordance with Code Section 16-3-21, 16-3-23, 16-3-23.1, or 16-3-24 shall be immune from criminal prosecution therefor unless in the use of deadly force, such person utilizes a weapon the carrying or possession of which is unlawful by such person under Part 2 of Article 4 of Chapter 11 of this title.

counsel testified that it was a strategic decision not to file such a motion inasmuch as he did not want to expose Dent to pre-trial cross-examination from the State, thereby previewing Dent's anticipated trial testimony, and that he chose to attempt to demonstrate self-defense to the jury, as opposed to the judge. Here again, Dent has failed to demonstrate that trial counsel's tactical decision was unreasonable. *Manner v. State*, supra.

(e)  Finally, citing *Schofield v. Holsey*, 281 Ga. 809, 812 (II), n.1 (642 SE2d 56) (2007), Dent urges that in determining prejudice, "the combined effects of trial counsel's errors should be considered together as one issue." But, because Dent has not shown any prejudice as the result of counsel's alleged errors, his reliance on *Schofield v. Holsey* to urge that the cumulative effect of the alleged errors warrants reversal is meritless.  *Davis v. State*, 302 Ga. 576 (805 SE2d 859) (2017).

Judgments affirmed. All the Justices concur.

Decided February 19, 2018.

Murder. Clayton Superior Court. Before Judge Carter.

Deborah L. Leslie, for appellant.

Tracy Graham Lawson, District Attorney, Elizabeth A. Baker, Jeff Gore, Elizabeth C. Rosenwasser, Assistant District Attorneys; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Jason M. Rea, Assistant Attorney General, for appellee.